BRONSTER FUJICHAKU ROBBINS
A Law Corporation

REX Y. FUJICHAKU          #7198
DAVID M. PLONA           #9892
1003 Bishop Street, Suite 2300
Honolulu, Hawaiʻi 96813
Telephone: (808) 524-5644, Fax (808) 599-1881
Email:  rfujichaku@bfrhawaii.com
        dplona@bfrhawaii.com

LENA N. BACANI (*pro hac vice*)
Loza & Loza, LLP
305 N. Second Avenue, Suite 127
Upland, California 91786
Telephone: (877) 406-5164, Fax: (213) 394-3625
Email:  lena.bacani@lozaip.com

Attorneys for Defendants/Counterclaim Plaintiff
NTKN, INC. and HUNG KY

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| TRENDTEX FABRICS, LTD.,<br><br>          Plaintiffs,<br><br>     vs.<br><br>NTKN, INC., a Hawaii corporation;<br>HUNG KY, an individual; SHAKA<br>TIME, INC., a Hawaii corporation;<br>TROPIHOLIC, INC., a Florida<br>corporation,<br><br>          Defendants. | Case No. 1:22-cv-00287-MWJS-KJM<br><br>Honorable Micah W.J. Smith<br><br>**DECLARATION OF LENA N.<br>BACANI** |
| NTKN, INC., a Hawaii corporation,<br><br>          Counterclaim Plaintiff,<br><br>     vs.<br><br>TRENDTEX FABRICS, LTD.,<br>a Hawaii corporation,<br><br>          Counterclaim Defendant. | |

## <u>DECLARATION</u>

I, Lena N. Bacani state and declare as follows:

1.      I am a partner in the law firm, Loza & Loza LLP ("Loza"), and am admitted before this Court *pro hac* vice.  I am counsel for NTKN, Inc. and Hung Ky (collectively, "NTKN") and have personal knowledge of the facts set forth herein.

2.  Attached hereto as <u>Exhibit 1</u> is a redacted version of the settlement agreements between Plaintiffs and NTKN's former co-defendants in the present action.  NTKN has filed a Motion to File Under Seal, or in the Alterative, File Publicly Settlement Agreements.  (Dkt. 174.)

3.  Attached hereto as <u>Exhibit 2</u> is a true and correct copy of excerpts from the deposition of Hung Ky.

4.  Attached hereto as <u>Exhibit 3</u> is a true and correct copy of excerpts of the Rule 30(b)(6) deposition of Dwight Hamai.

5.  Attached hereto as <u>Exhibit 4</u> is a true and correct copy of excerpts of NTKN's First Set of Requests for Production of Documents.

6.   Attached hereto as <u>Exhibit 5</u> is a true and correct copy of excerpts of the expert report of Linda Bradley.

7.  Attached hereto as <u>Exhibit 6</u> are true and correct copies of several examples of Trendtex and HawaiiPrint invoices from purchases of fabrics with the subject surface designs purchased by NTKN's predecessor, Ky's International Fabrics, Inc.

8.  NTKN was never informed by counsel for Trendtex Fabrics and Trendtex Holding that Trendtex Fabrics has assigned the the rights to the asserted copyrights until after Plaintiffs filed the Second Amended Complaint.

I declare under penalty of law that the foregoing is true and correct to the best of my knowledge.

DATED: March 22, 2024.

*Lena Bacani*

_____

Lena Bacani

# EXHIBIT 1

## DOCUMENT FILED UNDER SEAL

# **EXHIBIT 2**

```
 1   APPEARANCES:

 2   For Plaintiffs:

 3                  EDWARD T. FU, ESQ.

 4                  The DuBoff Law Group, PC

 5                  6665 SW Hampton Street, Suite 200

 6                  Portland, Oregon 97223-8357

 7

 8                  LEO Y. SHIMIZU, ESQ -- via speakerphone

 9                  Go Law Office LLLC

10                  1441 Kapiolani Boulevard, Suite 910

11                  Honolulu, Hawaii 96814

12                    -- via videoconference --

13

14   For Defendant NTKN, Inc. and Hung Ky:

15                  REX Y. FUJICHAKU, ESQ.

16                  Bronster Fujichaku Robbins

17                  Pauahi Tower, Suite 2300

18                  1003 Bishop Street

19                  Honolulu, Hawaii 96813

20                  LENA N. BACANI, ESQ.

21                  Loza & Loza

22                  305 North 2nd Avenue, Suite 127

23                  Upland, California 91786-6064

24                    -- via videoconference --

25
```

1    THE REPORTER:  Our disclosure is complete and available for

2    everyone to review.  It will be attached to the deposition

3    transcript.

4            THE VIDEOGRAPHER:  This is the deposition of

5    30(b)(6) witness, in the matter of Trendtex Fabrics

6    Ltd., et al. versus NTKN, Inc., et al.

7            We are located at Chong, Nishimoto, Sia, Nakamura,

8    & Goya; 1003 Bishop Street, Suite number 2500; Honolulu,

9    Hawai'i.

10           My name is Jason Moore, video specialist for

11   Certified Legal Video Services.

12           Will counsel please state your names.

13           MR. FU:  Edward Fu for the Plaintiffs.

14           THE INTERPRETER:  Candy Choi, Cantonese

15   interpreter for Mr. Ky.

16           THE WITNESS:  Hung Ky from NTKN

17   Incorporation.

18           MR. FUJICHAKU:  This is Rex Fujichaku,

19   Counsel for NTKN, Inc. and Mr. Ky.  And also on the

20   line is Lena Bacani, counsel for NTKN and Mr. Ky.

21           MR. GOTO:  Hi, Steve Goto, Counsel for

22   Counterclaim Defendant, Trendtex Holdings, LLC.

23           THE VIDEOGRAPHER:  Thank you, Counsel.

24           MR. FU:  Oh, and we also have Leo Shimizu on

25   the line, also for the Plaintiffs as well.

1   company, why then did you switch over to NTKN?

2        A    Because changing to a new name will make all

3   the documents more clear, not confusing.

4        Q    And so was everything else regarding business

5   operations essentially unchanged?

6             MR. FUJICHAKU:  Objection; vague and

7   ambiguous.

8   BY MR. FU

9        Q    All right.  Did you -- so as a result of

10  switch -- of the transition to NTKN, was there any

11  change to the garments that were made?

12       A    No.

13       Q    Were there any -- did the inventory -- any

14  remaining inventory or supplies from the Ky

15  corporation carry over to NTKN?

16       A    Correct.

17       Q    And were all the employees the same?

18       A    Different, but they all gone.

19       Q    How about the customers, did they change?

20       A    No.

21       Q    And how about liabilities?

22       A    What do you -- what kind of liability?

23       Q    Did the business have any debts or other

24  financial obligations that carried over?

25            MR. FUJICHAKU:  Objection; calls for a legal

```
 1        A    Me.  I decide.

 2        Q    Was this also -- did you also make these same

 3   decisions at the Ky's corporation?

 4        A    No.  My ex-wife decide.

 5        Q    And so what was -- what -- what duties did

 6   you perform at the old Ky's corporation then?

 7        A    I does -- I did sales.

 8        Q    Are you current -- are you currently involved

 9   in the garment business, clothing business, through

10   any other companies aside from NTKN?

11        A    Can you elaborate a little bit more clearly.

12        Q    First, do you have any -- any side companies,

13   or do you make garments through any other company

14   that's not related to NTKN?

15        A    No.

16        Q    So it sounds like at least some of the

17   supplies, you know, in your inventory may have -- you

18   know, some of the garments may have carried over from

19   -- from the Ky's corporation to NTKN.  Do you have any

20   objection if I sort of refer to them sort of

21   collectively as Ky or would you prefer -- or do you --

22   or would that be inaccurate?

23             MR. FUJICHAKU:  Objection; I think that

24   conflation may be confusing for the record, so vague

25   and ambiguous.
```

1  and then sell inventory?

2      A    We will do each size -- we will do 10 for

3  each size.  And then if somebody order, then we will

4  -- we have the products for them.

5      Q    Has NTKN or the Ky's corporation, did they

6  ever buy another garment maker's unused fabric?

7      A    No.

8      Q    So if you have extra fabric that, you know,

9  hasn't -- you know, no one's ordered it in a while, do

10  you ever throw it away?

11     A    No.  Just it will be hang around in the

12  warehouse.

13     Q    So, does it just stay in the warehouse

14  forever until it's used?

15     A    Yes.  I have fabric that is over 20 years is

16  still there.

17     Q    I hope the rats and the moths don't get to

18  it.

19     A    No, just the ants.

20     Q    Okay.  All right.  So, but are you aware that

21  you gave us some -- provided us with some photographs

22  of fabric rolls?

23     A    Yes.

24     Q    So Exhibit 2, so this is a composite we made

25  of an image and of the properties from the original

# **<u>EXHIBIT 3</u>**

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE DISTRICT OF HAWAII

 3                        - - -

 4    TRENDTEX FABRICS, INC., A HAWAII      ) Case No.:
      CORPORATION; AND TRENDTEX HOLDING, LLC, ) 1:22-
      A HAWAII LIMITED LIABILITY COMPANY;   ) LEK-KJM
 5                                          )
                                            )
 6                 PLAINTIFF,               )
                                            )
 7                 VS.                      )
                                            )
 8                                          )
      NTKN, INC., A HAWAII CORPORATION; HUNG )
 9    KY, AN INDIVIDUAL; SHAKA TIME, INC., A )
      HAWAII CORPORATION; LEILANI'S ATTIC,  )
10    INC., A CALIFORNIA CORPORATION; HAWAII )
      HANGOVER, LLC, A MISSOURI LIMITED     )
11    LIABILITY COMPANY; AND MARK MADL, AN  )
      INDIVIDUAL D/B/A/ CITIES FASHION;     )
12                                          )
                   DEFENDANTS.              )
13                                  _____)
                                            )
14    NTKN, INC., A HAWAII CORPORATION,     )
                                            )
15                 COUNTERCLAIM PLAINTIFF,  )
                                            )
16                 VS.                      )
                                            )
17    TRENDTEX FABRICS, LTD., A HAWAII       )
      CORPORATION,                          )
18                 COUNTERCLAIM DEFENDANT.  )
      _____)
19

20           VIDEO-RECORDED REMOTE DEPOSITION

21              OF DWIGHT KATSUTOSHI HAMAI

22         TUESDAY, FEBRUARY 27, 2024, 11:00 A.M.

23      Reported by Patricia Gray-Conrad, CSR No. 12633
```

            8   color of the strike-off that the customer saw is the

            9   color that is ordered by -- or is ordered from the

03:17:25   10   manufacturer?

           11       A    It varies.  Sometimes the customer maintains
a

           12   portion of the strike-off for verification.

           13       Q    Does Trendtex ever do any of the
verification?

           14       A    Yes.

03:17:44   15       Q    And when is that done?

           16       A    When we receive the printed fabric.

           17       Q    Are you talking about the final rolls of

           18   fabric?

           19       A    Sorry.  No.

03:18:01   20       Q    Can you clarify your answer?  When you say

           21   when you receive the fabric, what are you referring to?

           22       A    We receive what we call hanger samples or

           23   printed samples from the supplier.

           24       Q    And how much fabric is in the hanger samples?

03:18:28   25       A    Maybe 15-by-22 possibly or so.


103




03:18:39    1       Q    Is that in inches or something else?

```
                2       A       Inches.

                3       Q       And are those hanger samples shipped to

                4       Trendtex or to the customer?

03:18:57        5       A       Trendtex.

                6       Q       And what does Trendtex do with those samples?

                7       A       We offer a portion to the customer.

                8       Q       How large of a portion?

                9       A       15-by-22 possibly, inches.  It's on a hanger

03:19:18       10       sample, what we call a hanger sample.

               11       Q       And does Trendtex keep a portion of that

               12       sample?

               13       A       Yes.

               14       Q       And what portion?

03:19:30       15       A       We normally keep three or four hanger
samples.

               16       Q       You keep three or four.  So how many hanger

               17       samples do you typically get from the manufacturer for
a

               18       given color and a given surface designs?

               19       A       It varies.  It varies a lot.

03:19:57       20       Q       Did you usually get more than one?

               21       A       Yes.

               22       Q       And does Trendtex do anything with those

               23       hanger samples?

               24       A       We offer some of them to the customer.

03:20:15       25       Q       What do you do with the others that you don't
```

104

03:20:18   1   give to the customer?

2        A     It hangs in our archives.

3        Q     And for how long?

4        A     As long as we can keep them.

03:20:31   5   Q     So for the Ky International fabrics that were

6   purchased from Trendtex Fabrics, do you have those

7   hanger samples in your archives?

8        A     Yes.

9        Q     And how many?

03:20:48   10   A     Could be two or three.

11        Q     Two or three per surface design?

12        A     Yes.  It could be less if it's a reprint.

13        Q     And why is that?

14        A     Because the colors are usually the same.

03:21:12   15   Q     Do you save hanger samples for reprints?

16        A     Yes.

17        Q     And do you have hanger samples for all of Ky

18   International's reprints?

19        A     I believe so.

03:21:32   20   Q     And have they been produced in the
litigation?

```
         21      A    Excuse me?

         22      Q    Have they been produced?  Did you provide
your

         23   lawyers with those samples?

         24        MR. GOTO:  Objection.  Steve Goto.

03:21:48 25        THE COURT REPORTER:  I can't hear you.


105




03:21:50  1        MR. GOTO:  Again, Steve Goto, objection.  This

          2   witness is not designated to respond to Question 25 on

          3   the Fabrics' notice and 20 on the Holding;s notice.

          4        THE COURT REPORTER:  20 on the what?

03:22:06  5        MR. GOTO:  Holding's notice.

          6        THE COURT REPORTER:  Thank you.  Thank you.

          7   BY MS. BACANI:

          8      Q    This is also related to the transactions

          9   between Trendtex or Hawaiiprint and NTKN?

03:22:20 10        MR. GOTO:  The question was specifically

         11   production.

         12        THE COURT REPORTER:  I'm sorry.  What was it,

         13   Counsel?

         14        MR. GOTO:  You can rephrase.  The question was

03:22:26 15   specifically production.  You can rephrase.
```

16          THE COURT REPORTER:  Thank you.

17          MS. BACANI:  And then I would just, again, caution

18     against speaking objections.  You can make the objection

19     to scope without providing a long speaking objection.

03:22:44  20     Okay.

21     BY MS. BACANI:

22          Q    All right.  Let me ask you again, Mr. Hamai.

23               So for the NTKN or, I guess they were Ky

24     International samples, how many samples did you provide

03:23:02  25     in the litigation?


106


03:23:08  1          A    I'm not sure.

2          Q    Did you search for samples?

3          A    Yes.

4          Q    And did you find any samples?

03:23:17  5          A    Yes.

6          Q    How many would you say?

7          MR. DUBOFF:  Objection; calls for speculation.

8               Answer it if you can.

9          THE WITNESS:  One sample at least.

03:23:29  10     BY MS. BACANI:

             11        Q    One sample total?

             12        A    For each surface design.

             13        Q    And so is that 26 samples?

             14        A    Yes.

03:23:48     15        Q    And what about for the colors did you provide

             16   a sample for each color?

             17        A    Of the 26 designs, yes.

             18        Q    And you had all of those colors in your

             19   archives?

03:24:06     20        A    Yes.

             21        Q    And did you have different colors for each

             22   surface designs sir?

             23        A    Possibly, yes.

             24        Q    When you say possibly you don't recall?

03:24:28     25        A    Well every design desire differ comes in


107


03:24:32      1   different color ways.

              2        Q    And are all of those color ways strike that.

              3   Are all of the hanger samples manufactured by the same

              4   manufacturer?

03:24:47      5        A    No.

              6        Q    Are all of the surface designs strike that

# EXHIBIT 4

BRONSTER FUJICHAKU ROBBINS
A Law Corporation
REX Y. FUJICHAKU          #7198
DAVID M. PLONA            #9892
1003 Bishop Street, Suite 2300
Honolulu, Hawai'i 96813
Telephone: (808) 524-5644
Facsimile:  (808) 599-1881
Email: rfujichaku@bfrhawaii.com
        dplona@bfrhawaii.com

LENA N. BACANI (*pro hac vice*)
Loza & Loza, LLP
305 N. Second Avenue, Suite 127
Upland, California 91786
Telephone: (877) 406-5164
Email: lena.bacani@lozaip.com

Attorneys for Defendants/Counterclaim Plaintiff
NTKN, INC. and HUNG KY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| TRENDTEX FABRICS, LTD., a Hawaii Corporation; and TRENDTEX HOLDING, LLC, a Hawaii limited liability company;<br><br>    Plaintiffs,<br><br>  vs.<br><br>NTKN, INC., a Hawaii corporation; HUNG KY, an individual; SHAKA TIME, INC., a Hawaii corporation; LEILANI'S ATTIC, INC., a California corporation; and HAWAII HANGOVER, LLC, a Missouri limited liability company; MARK MADL, an individual D/B/A CITIES FASHION;<br><br>    Defendants. | Case No. 1:22-cv-00287-LEK-KJM<br><br>**DEFENDANT NTKN, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION TO PLAINTIFF TRENDTEX FABRICS, LTD.** |
| NTKN, INC., a Hawaii corporation,<br><br>    Counterclaim Plaintiff,<br><br>  vs.<br><br>TRENDTEX FABRICS, LTD., a Hawaii corporation,<br><br>    Counterclaim Defendant. | |

**REQUEST NO. 129:** All documents or communications stating or otherwise indicating that the fabric sold by You to NTKN that displayed the 73285 Surface Design was completely exhausted before the manufacture of the garments sold by NTKN from January 2019 until the present that allegedly displayed the same or similar design.

**REQUEST NO. 130:** All documents or communications stating or otherwise indicating that the fabric sold by You to NTKN that displayed the 73106 Surface Design was completely exhausted before the manufacture of the garments sold by NTKN from January 2019 until the present that allegedly displayed the same or similar design.

**REQUEST NO. 131:** All licenses, contracts, or other agreements granting rights in U.S. Copyright Registration No. VAu 1-104-076 to any person or entity.

**REQUEST NO. 132:** All licenses, contracts, or other agreements granting rights in U.S. Copyright Registration No. VAu 1-104-023 to any person or entity.

**REQUEST NO. 133:** All licenses, contracts, or other agreements granting rights in U.S. Copyright Registration No. VAu 1-104-025 to any person or entity.

**REQUEST NO. 134:** All licenses, contracts, or other agreements granting rights in U.S. Copyright Registration No. VAu 1-107-464 to any person or entity.

**REQUEST NO. 135:** All licenses, contracts, or other agreements granting rights in U.S. Copyright Registration No. VAu 1-190-261 to any person or entity.

**REQUEST NO. 136:** All licenses, contracts, or other agreements granting rights in U.S. Copyright Registration No. VAu 624-818 to any person or entity.

**REQUEST NO. 137:** All licenses, contracts, or other agreements granting rights in U.S. Copyright Registration No. VAu 635-755 to any person or entity.

**REQUEST NO. 138:** All licenses, contracts, or other agreements granting rights in U.S. Copyright Registration No. VAu 486-537 to any person or entity.

**REQUEST NO. 139:** All licenses, contracts, or other agreements granting rights in U.S. Copyright Registration No. VAu 595-752 to any person or entity.

**REQUEST NO. 140:** All licenses, contracts, or other agreements granting rights in U.S. Copyright Registration No. VAu 554-340 to any person or entity.

**REQUEST NO. 141:** All licenses, contracts, or other agreements granting rights in U.S. Copyright Registration No. VAu 520-767 to any person or entity.

**REQUEST NO. 142:** All licenses, contracts, or other agreements granting rights in U.S. Copyright Registration No. VAu 1-104-074 to any person or entity.

**REQUEST NO. 143:** All licenses, contracts, or other agreements granting rights in U.S. Copyright Registration No. VAu 565-372 to any person or entity.

**REQUEST NO. 144:** All licenses, contracts, or other agreements granting rights in U.S. Copyright Registration No. VAu 1-185-736 to any person or entity.

**REQUEST NO. 145:** All licenses, contracts, or other agreements granting rights in U.S. Copyright Registration No. VAu 1-069-408 to any person or entity.

**REQUEST NO. 146:** All licenses, contracts, or other agreements granting rights in U.S. Copyright Registration No. VAu 497-009 to any person or entity.

**REQUEST NO. 147:** All licenses, contracts, or other agreements granting rights in U.S. Copyright Registration No. VAu 1-069-405 to any person or entity.

**REQUEST NO. 148:** All licenses, contracts, or other agreements granting rights in U.S. Copyright Registration No. VAu 1-823-989 to any person or entity.

**REQUEST NO. 149:** All licenses, contracts, or other agreements granting rights in U.S. Copyright Registration No. VAu 1-823-995 to any person or entity.

**REQUEST NO. 150:** All licenses, contracts, or other agreements granting rights in U.S. Copyright Registration No. VAu 1-104-092 to any person or entity.

# **<u>EXHIBIT 5</u>**

# EXPERT REPORT OF LINDA BRADLEY

Trendtex Fabrics, Ltd.; Trendtex Holding LLC

v.

NTKN, Inc.; Hung Ky; Shaka Time, Inc.; Leilani's Attic, Inc.; Hawaii Hangover, LLC

Case No. 1:22-cv-00287 (District of Hawaii)

I, Linda A. Bradley, hereby state as follows: [1]

## I. Qualifications

1. I received a BA in Home Economics (minor in Anthropology) in 1970 from California State University, Chico. In 1980, I received an MA in Human Ecology with a focus on clothing and culture. I completed additional graduate work in Sociology at the University of California (Davis) where I focused on cultural identity and historic/comparative research methods. This resulted in another MA in 1988 and a PhD in 1992.

2. I have taught at the University level for over 40 years (including 20 years as a tenured Professor prior to my retirement as Professor Emerita). I focused on courses in apparel merchandising, design, and textiles. My teaching experience includes over 10 years at the University of Hawaii where I concentrated on Hawaiian culture and how it is expressed in the designs of textiles and apparel design. I developed several courses on textiles and clothing directed to preparing students to work in Hawaii's Aloha attire industry. During this time, I wrote *Aloha Attire: Hawaiian Dress in the Twentieth Century*, a comprehensive text on the history of Hawaiian textiles and the wide range of aloha attire. I also co-wrote the award-winning book *The Art of the Aloha Shirt* during this period. At the University of Hawaii, I was the Curator of the Historic Costume and Textiles Collection.

---

[1] It is my understanding (based on representations from NTKN's counsel), that Trendtex has not provided certain information or documents requested by NTKN. Such information and documentation may be material and may impact my analysis. I am basing my opinions expressed in this report on the information identified herein. Should additional information and documentation become available, I reserve the right to amend or supplement this Report.

- "Rather, it seems clear that Hung Ky has taken his business, along with the Plaintiff's intellectual property, to another printer." [Young Report, ¶ 105].

- "Side by side images throughout this report provide irrefutable evidence that all twenty-six of the Plaintiff's designs were infringed." [Young Report, ¶ 106].

- "The Defendant's designs are clearly the creative and intellectual property of the Plaintiff." [Young Report, ¶ 106].

- "[I]t is also clear that while using the same intellectual property, products sold by the Defendant are not the result of the Plaintiff's screens." [Young Report, ¶ 107].

- "[T]he design is clearly Plaintiff's protected intellectual property." [Young Report, ¶ 108].

37.    Ms. Young's expert report is filled with numerous statements like the examples above that express ultimate facts or legal conclusions. Ms. Young does not explain her reasoning, support, or analysis methodology she used to come to her conclusions of copyright infringement and scope of intellectual property rights, or any of the corresponding legal standards or tests. She also does not identify particular elements in each of the Subject Designs which may, or may not be, subject to copyright protection.

B.    <u>Ms. Young's Report fails to address or account for how the design and colorway selection process may result in alternative colorways.</u>

38.    It is common industry practice that, once a design is finalized, the next step in production is to choose a group of possible colorways for the garments that will feature the design. Often, manufacturers select multiple colorways for a given design, and will print yardage for each colorway for consideration. These are referred to in the industry as "samples." Manufacturers often select a subset of the printed colorway samples to go into full production and enter the chosen production colorways into the print record or print history. Typically, the unused samples will be set aside. This excess production is often unaccounted for in the print history.

39.    This process may result in sample or excess fabric that may not appear on a Print History and may not have otherwise been put into production by

the manufacturer. Producing garments from this fabric may result in a colorway that was not widely produced by the manufacturer but that nonetheless was printed by the manufacturer using the manufacturer's screen.

40.    Excess production also comes from miscommunication between the purchaser and the producer as the purchaser tries to explain what is wanted in design and color. It can be particularly troublesome if there is a difference in language between the parties. There may be no record of these excess fabrics at all. If there is a record in a print history, it may show up as a "discontinued" or "cancelled" order and may result in excess fabric in a colorway that is not otherwise intended to be available to be ordered by garment manufacturers.

41.    Regardless of the case of the excess production, such fabric is rarely wasted. It is not uncommon for the fabric to be provided to or sold to the purchaser of the intended colorways.

42.    I understand from NTKN's CEO, Hung Ky, that NTKN follows this common industry practice in Hawaii.  Specifically, Mr. Ky would select 5-7 test colors for a given design.  Trendtex would then print the chosen designs on fabrics using the chosen colorways, creating samples for Mr. Ky's consideration.  After reviewing the samples, NTKN would place orders with HawaiiPrint or Trendtex for a selected subset of colorways.  Trendtex would send the designs to other companies overseas to print the fabrics, which would be packed in boxes and delivered to NTKN.

43.    I further understand from Mr. Ky that the precision of designs and fabrics was not consistently maintained throughout the order history, meaning that there could be variations in design, fabric composition and colors between samples, production fabrics, and reorders ordered from the same source.

44.    It is important to understand that the way most of Hawaii's apparel companies have operated is quite different from those on the US Mainland. Most Hawaiian apparel companies have been very small with only a handful of employees and garment production was sent out to independent contractors. Agreements often were made with a handshake. Mr. Ky's deposition testimony regarding how he conducts business, and has done

for decades—with limited records and documentation—is consistent with how the small mom & pop apparel companies in Hawaii have operated.

C. **Ms. Young's Report fails to address or account for NTKN's inconsistent and mistaken labelling of colorways.**

45.   NTKN's system for labelling the colorways for its fabrics is inconsistent and, at times, inaccurate. As a result, the written description or identification of the colorway for a particular garment produced by NTKN may not match the actual colorway for the garment which may lead to a mismatch with Trendtex's identification of the colorway of the fabric from which the garment was produced.

### *C.1 – Mislabeling the colorway*

46.   There are numerous instances of NTKN mislabeling the color for its products. Some examples are displayed below in **Table 1.** In these examples, the colorway in the product description does not reflect the color of the garment.



| Table 1 |
|---|

| [NTKN 540] | [NTKN 540] |
|---|---|
| Description is "W" but shirt is not white | Description is W but shirt is not white |

*BAL-483 W*
*100% Cotton $11.00*

*BAL-418 W*
*100% Cotton $11.00*

53.    NTKN's mislabeling of colorways also underscores the possibility that it has mislabeled the type of fabric associated with its various products. Ms. Young's report does not take this into account.

D.  <u>Ms. Young's Report fails to address or account for the subjective nature of labelling colors.</u>

54.    Trendtex and NTKN appear to have taken an imprecise approach to identifying and labeling the colorways for their respective goods. This practice is not uncommon in the apparel industry in Hawaii, which tends to be less rigid than in other locales across the United States. Because of the subjective nature of naming colors, this approach has led to contradictory categorizations of colorways. As a result, the written description or identification of the colorway for a garment produced by NTKN may not match Trendtex's identification of the colorway of the fabric from which the shirt was produced.

55.    For example, the prominent garments in the images below (**Table 4**) are all identified as NB or Navy Blue. However, there are significant variations in the color of the respective garments.



**Table 4**

| NTKN 0000518 | NTKN 518 | NTKN 519 |
| NTKN 519 | NTKN 520 | NTKN 520 |

F. <u>Ms. Young's Report fails to account for textile and fashion industry norms specific to Hawaii.</u>

70.   In her Report, Ms. Young fails to consider the circumstances of textile manufacturing and retailing in Hawaii specifically. Instead, Ms. Young appears to apply standards and assumptions that might apply to manufacturing and retailing in mainland U.S. but that might not apply in Hawaii.

71.   For example, Ms. Young does not acknowledge or account for the general differences in record-keeping or documentation practices between mainland United States and Hawaii.

72.   As a result, in Hawaii, it is not uncommon for a garment company to have little or no documentation for print histories, purchases, sales, returns, inventory, design process, source of material, or date of receipt of material.

73.   In Hawaiian fashion manufacturing and retailing, it is common for leftover fabrics from prior seasons, samples, or other non-production sources to be preserved. This leftover fabric is often given to employees. or if there is a large quantity, can be sold wholesale.

74.   Long periods between the purchase or acquisition of fabric and the subsequent manufacture of the fabric into finished goods are not uncommon in Hawaii. Apparel retailers do not follow the typical purchase patterns of companies focusing on current trends. Some of the trends in aloha shirts and other forms of aloha attire have been virtually unchanged for decades. Because Hawaiian prints stay in style for long periods, purchasing or stockpiling large quantities to use over an extended period is a common strategy for Hawaii retailers.

75.   In her Report, Ms. Young appears to incorrectly assume that "just in time" production, which has become standard in the mainland United States, applies in Hawaii. "Just in time" (or JIT) production is a management and production strategy aimed at increasing efficiency and decreasing waste by only receiving fabric and goods as needed for production and not stockpiling goods and materials in inventory. In Hawaii, JIT production is a relatively new approach and is generally only used by larger companies seeking to make timely resort wear aimed at a national audience. By contrast, most smaller retailers rely on traditional strategies. While fashions

in the rest of the United States change very rapidly—generally four times annually—traditional Hawaiian designs change more slowly, often every few years rather than months. This allows Hawaii's traditional manufacturers to acquire and stockpile large quantities of materials when prices are favorable and incorporate them slowly into the business.

76.    In my experience, it is common for a company (like NTKN) to buy and stockpile fabric until needed and then manufacture a few garments at a time, as needed, over the following years. This is a common strategy for smaller manufacturers and retailers in Hawaii. I understand NTKN employs this practice and continues to have excess fabric purchased from Hawaiiprint and Trendtex in its inventory as shown in documents provided to me, including an inventory record (NTKN0000622) and photographs of rolls of fabric that I understand have been produced in this litigation.

77.    Many retailers have transitioned to a more "direct-to-consumer" approach through online sales. In these instances, the garments may not actually be produced until the sale is made. I understand NTKN added direct-to-consumer online sales in response to the restrictions caused by the COVID pandemic. I also understand that NTKN manufactures and sells garments on an on-demand basis.

78.    Additionally, the terminology used in the portions of the Print History provided by Ms. Young in her report may indicate excess production. For example, Ms. Young includes a portion of the "73627 Print History" which indicates that Order No. 73497 for that design was "CANCELED." This is a commonly used method to indicate excess production of fabric for this design. The colorways for this cancelled order are not identified.

G.    Ms. Young's Report does not adequately account for print variations caused in the screenprinting process.

79.    In her Report, Ms. Young fails to account for the variations in resulting prints that can occur during the screenprinting process, particularly hand printing methods or methods that involve potentially variable pressure as the dye is pushed through the screen onto the fabric. The Report acknowledges that variable pressure applied during the printing process could cause "fluctuations," but concludes that such variations would be "miniscule." [Young Report, ¶ 16].   The Report also concludes that "the

variations found in the Defendant's work is beyond the realm of reasonable variations or differences" caused by variations in print pressure. [Young Report, ¶ 22]. These conclusions reference variable print pressure but dismiss it without actually analyzing this possible source of variation. As such, when the Young Report states that "[s]creen pressure has been considered in this analysis," I must respectfully disagree. [Young Report, ¶ 110].

80.    Inconsistent pressure against the squeegee, the viscosity of the dye, and the cleaning and drying of screens between uses can all result in variations of the resulting print, even if the screen is the same. Such differences can include variations in color saturation, shading, location, density, and shape of the applied dye.

81.    The result is that garments produced from fabric from the same run may have variations between them resulting from differences in pressure during the different applications of dye. Additionally, shirts produced from fabric produced from different runs may also have variations, even if the same screen was used.

82.    In her Report, Ms. Young concludes that certain "differences are not a function of uneven printing processes; these are a function of different screens and different print houses." [Young Report, ¶ 75]. Ms. Young also states that certain variations are "not the product of poor printing practice, this is an entirely different engraving or screen, from a different print house." [Young Report, ¶ 77].

83.    Respectfully, I disagree with those assessments. The screen printing process allows for errors or variations in printing consistent with those that Ms. Young has identified in her Report. These printing variations stem from varying viscosities of the dye applied, different pressure applied as the dye passes through the screen, or whether screens are adequately cleaned and dried between uses. The humidity and conditions in the printing facility can also impact the consistency of the prints from the same screen.

84.    From my analysis, the alleged differences identified in relation to Subject Products 458, 459, 470, and 819 are consistent with variations resulting from uneven pressure applied to the squeegee while moving dye across the screen.

85.   I also disagree with Ms. Young's assessment that "printing is a precise art – these variations can only occur from a different set of screens, from a different company." [Young Report, ¶ 88]. While roller printing is a more precise process, screenprinting by hand has a high potential for human error. In such processes, even a sneeze can cause variations even if the same screen is used.

86.   I also disagree with Ms. Young's assessment that "there is no way to overdye or modify the color once dyed." [Young Report, ¶ 30]. Most screen prints start with pure white fabric and all color is applied by dye during the printing process. However, screenprinting can be accomplished using fabric that has already been dyed a plain light color. In these circumstances, additional color or dye can be applied to the colored fabric following the usual process.

87.   Some of the designs at issue have 12-15 different colors. For example, the image below (from paragraph 73 of Ms. Young's report) appears to have 15 different colors (as represented by the colored rectangles at the bottom of the image). These indicate the different color dyes applied at different stages in the printing process. As the number of different dyes increase, the opportunity and likelihood of variations also increases.



[Paragraph 73 of Ms. Young's Report]

## VI.    Conclusions

88.    I disagree with Ms. Young's ultimate conclusion that "the suggestion that the Defendant's designs are actually made with the Plaintiff's fabric is ludicrous and a transparent attempt at obfuscation." [Young Report, ¶ 111].

89.    Ms. Young's Report does not explain the underlying assumptions, methodology, or sources of information that she relied on for her analysis. As such, I am unable to accept or agree with her ultimate conclusions.

90.    Ms. Young's Report also overlooks or fails to properly account for multiple considerations which, when properly evaluated, point to plausible explanations for the perceived differences in the colorways, fabric, and designs.

Dated: December 20, 2023

Linda A. Bradley

# **<u>EXHIBIT 6</u>**

# TRENDTEX FABRICS, Limited

1928 Kalani Street • Honolulu, Hawaii 96819-3270 • (808) 842-1356

**INVOICE**

Invoice Number **T46389**

**Sold To:**
Ky's International Fashion      1161
819 Moowaa Street Rm 207
Honolulu, HI 96819

Date of Invoice    JAN 0 2 2008

Terms    Net 60

| | |
|---|---|
| Purchase Order | 21641 |
| Salesperson | Donna |
| Customer Order | 12639 |
| Ship To | |
| **Vessel:** | Ikoma V19 (L1) |
| **Vessel ETA** | 12/22/2007 |
| Print Name: | 205T Batik Panel Hibiscus 805 |

*Pay this invoice to Trendtex Fabrics*

| Color | Quantity | Design | Description | Price | Extension |
|---|---|---|---|---|---|
| 21641 (Sage) | 839.5 | KS-6919R | Cotton Poplin | $1.92 | $1,611.84 |
| 21641 (Blue) | 2755.7 | KS-6919R | Cotton Poplin | $1.92 | $5,290.94 |
| 21641 (Natural) | 1048 | KS-6919R | Cotton Poplin | $1.92 | $2,012.16 |

PAID

**Invoiced Yds** 4,643.2

Total: 10 Cartons (82 Pcs)

Ctn# 1-10
**See attached packing list for details**

Arrived via Ikoma V19   ETA: 2007-Dec-22

| | |
|---|---|
| Sales Tax | |
| Frt Charges | |
| **Grand Total:** | $8,914.94 |

**RECEIVED BY** _____      **DATE** _____

A SERVICE CHARGE OF 1-1/2% PER MONTH WILL BE CHARGED ON PAST DUE ACCOUNTS. (ANNUAL PERCENTAGE RATE OF 18%.)
A SERVICE FEE WILL BE CHARGED FOR ANY RETURNED CHECKS.
ALL CLAIMS MUST BE MADE WITHIN 20 DAYS OF RECEIPT OF GOODS. CUT PIECES ARE NOT RETURNABLE. NO RETURNS ACCEPTED WITHOUT PRIOR AUTHORIZATION.
U.S. Custom regulations require anyone performing "repacking" for fabric retail sales clearly mark each item in a conspicuous place as legible, indelible, and permanent, the country of origin of the goods.
T/C Blends are printed by pigments that are fixed onto the fabric by binding resins. Pigment prints are all subject to fading after wash. We do not guarantee fastness.

Scanned with CamScanner



**HAWAIIPRINT, INC.**
916-B Kaaahi Place
Honolulu, HI 96817
Ph.  808-847-4414
Fax   808-847-1688

# Sales Order

| Date | S.O. No. |
|------|----------|
| 4/23/2010 | 672624 |

| Name / Address | Ship To |
|----------------|---------|
| KY INTERNATIONAL FASHION, INC.<br>819 MOOWAA STREET #207<br>HONOLULU, HI 96817 | |

| | P.O. No. | Rep | Terms | Request Date |
|---|----------|-----|-------|--------------|
| 4/20 | 73096-A | MA | 3%CASH | 5/3/2010 |

| Item | Description | Ordered | U/M | Rate | Amount |
|------|-------------|---------|-----|------|--------|
| 73096 | "WAIMEA SURF" | | | | |
| | COTTON POPLIN FACE | | | | |
| 73096 61 | RED | 1,116 | yd | 2.03 | 2,265.48T |
| 73096 35 | AQUA | 1,108 | yd | 2.03 | 2,249.24T |
| 73096 25 | PERIWINKLE | 1,160 | yd | 2.03 | 2,354.80T |
| | | | | | |
| | INTACT CTN#1-6  PORTION A | | | | |
| | | | | | 6,869.52 |
| DISCOUNT | | | | -3.00% | -206.09 |
| | Sales Tax | | | 0.50% | 33.32 |
| RECEIVED BY: | | | | **Total** | **$6,696.75** |



**HAWAIIPRINT, INC.**
916-B Kaaahi Place
Honolulu, HI 96817
Ph.  808-847-4414
Fax  808-847-1688

# Invoice

| Date | Invoice # |
|---|---|
| 8/26/2010 | 61205 |

**PAID**

| Sold To | Shipped To |
|---|---|
| KY INTERNATIONAL FASHION, INC. <br> 819 MOOWAA STREET #207 <br> HONOLULU, HI 96817 | |

820

| P.O. Number | Terms | Delivery Date | Rep | S.O. No. |
|---|---|---|---|---|
| 73138 | 3%CASH | 8/26/2010 | MA | 672864 |

| Quantity | Item Code | · Description | U/M | Price Each | Amount |
|---|---|---|---|---|---|
| 1 | 73138 | "EWA HIBISCUS" | | | 0.00T |
| | | 100% RAYON POPLIN, 100X80, 40X40, WIDE | | | |
| 1,148 | 73138 81R | BLACK | yd | 2.70 | 3,099.60T |
| 1,028 | 73138 79R | WINE | yd | 2.70 | 2,775.60T |
| 1,065 | 73138 11R | WHITE | yd | 2.70 | 2,875.50T |
| | | 6 INTACT CTNS. #19-24 | | | |
| | | | | | 8,750.70 |
| | DISCOUNT | | | -3.00% | -262.52 |

PAID IN FULL.  THANK YOU VERY MUCH!

| | |
|---|---|
| **Subtotal** | $8,488.18 |
| **Sales Tax  (0.5%)** | $42.44 |
| **Total** | $8,530.62 |



# HAWAIIPRINT, INC.

740 Kohou Street
Honolulu, HI 96817
Ph.  808-847-4414
Fax  808-847-1688

# Sales Order

| Date | S.O. No. |
|------|----------|
| 10/7/2011 | 674139 |

| Name / Address | Ship To |
|----------------|---------|
| KY INTERNATIONAL FASHION, INC.<br>819 MOOWAA STREET #207<br>HONOLULU, HI 96817 | |

481

| | P.O. No. | Rep | Terms | Request Date |
|---|----------|-----|-------|--------------|
| | 73454 | MA | 3%CASH | 2/17/2012 |

| Item | Description | Ordered | U/M | Rate | Amount |
|------|-------------|---------|-----|------|--------|
| 73454 | "TWO WHEELER" | | | | 0.00T |
| | 100% COTTON POPLIN,133X72, 40X40,44/45" | | | | |
| 73454 24R | SLATE | 1,133 | yd | 2.97 | 3,365.01T |
| 73454 33R | SAGE | 1,129 | yd | 2.97 | 3,353.13T |
| 73454 26R | ROYAL | 1,126 | yd | 2.97 | 3,344.22T |
| | 6 INTACT CTNS. #1-6 | | | | |
| | | | | | 10,062.36 |
| DISCOUNT | | | | -3.00% | -301.87 |
| | Sales Tax | | | 0.50% | 48.80 |

PAID

Pd 2/21/12
# 9809.29
3/22/6

| RECEIVED BY: | | **Total** | $9,809.29 |
|--------------|---|-----------|-----------|



*819 Moowaa street #207 Honolulu Hawaii 96817  Email: sales@kyifi.com*

hawaiian shirts

*Tel: 808-853-2228 Fax: 808-8392230  www.kyifi.com*

# Hawaiian Border Design Shirts

**AL-358 NB**
100% Cotton $16.00

**AL-353 OR**
100% Cotton $16.00

**AL-352 G**
100% Cotton $16.00

**AL-336 NB**
100% Cotton $16.00

**AL-331 Y**
100% Cotton $16.00

**AL-338 NB**
100% Cotton $16.00

**AL-801 G**
100% Cotton $16.00

**AL-804 B**
100% Cotton $16.00

**AL-805 NB**
100% Cotton $16.00

**AL-806 BL**
100% Cotton $16.00

**AL-808 R**
100% Cotton $16.00

**AL-521 G**
100% Cotton $15.00

**SIZE:   S, M, L, XL  $16.00   2XL, 3XL-$17.00   4XL-$22.00   6XL-$26.00   8XL-31.00**
COLOR : R=RED,  NB=NAVYBLUE,  BL=BLUE,  G=GREEN,  OR=ORANGE,  Y=YELLOW,  W=WHITE,  CR=CREAM
P=PINK,  PP=PURPLE,   GA=GREY,   B=BLACK,  TU=TURQ,  OL=OLIVE