Rex Y. Fujichaku (#7198)
David M. Plona (#9892)
BRONSTER FUJICHAKU ROBBINS
1003 Bishop Street, Suite 2300
Honolulu, HI 96813
Tel: 808-524-5644; Fax: 808-599-1881
Email: rfujichaku@bfrhawaii.com
       dplona@bfrhawaii.com

Lena N. Bacani (*pro hac vice*)
LOZA & LOZA, LLP
305 N. Second Ave., Ste. 127
Upland, CA  91786
Tel: (877) 406-5164; Fax: (213) 394-3625
Email:  lena.bacani@lozaip.com

*Attorneys for Defendants/Counterclaimants,*
*NTKN, INC. and HUNG KY*

UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| TRENDTEX FABRICS, LTD., a Hawaii Corporation; and TRENDTEX HOLDING, LLC, a Hawaii limited liability company;<br><br>    Plaintiff,<br><br>  v.<br><br>NTKN, INC., a Hawaii corporation; HUNG KY, an individual; SHAKA TIME, INC., a Hawaii corporation; LEILANI' S ATTIC, INC., a California corporation; and HAWAII HANGOVER, LLC, a Missouri limited liability company; MARK MADL, an individual D/B/A CITIES FASHION;<br><br>    Defendants. | Case No. 1:22-cv-00287-MWJS-KJM<br><br>**OPPOSITION TO TRENDTEX FABRICS, LTD.'S MOTION FOR SUMMARY JUDGMENT RE: DEFENDANTS' COUNTERCLAIMS [DKT. 170]; CERTIFICATE OF COMPLIANCE; CERTIFICATE OF SERVICE**<br><br>Honorable Micah W.J. Smith<br>Trial Date:  July 29, 2024 |
| NTKN, INC., a Hawaii corporation; and HUNG KY, an individual;<br><br>    Counterclaimants,<br>  v.<br><br>TRENDTEX FABRICS, LTD., a Hawaii corporation,<br><br>    Counter-Defendant. | |

**OPPOSITION TO TRENDTEX FABRICS, LTD.'S MOTION FOR SUMMARY JUDGMENT RE: DEFENDANTS' COUNTERCLAIMS [DKT. 170]**

Defendants and Counterclaimants NTKN, Inc. ("NTKN"), and Hung Ky ("Ky"), (collectively, "NTKN"), oppose Trendtex Fabrics, Ltd.'s ("Trendtex Fabrics" or "Trendtex") Motion for Summary Judgment (Dkt. 170, "MSJ") on NTKN's Counterclaims as follows:

## I. INTRODUCTION

Trendtex Fabrics' MSJ is based entirely on its assertion that it will prevail on its copyright infringement claims. However, as detailed in NTKN's Opposition to the concurrently-filed Motion for Partial Summary Judgment ("MPSJ," Dkt. 168), Trendtex Fabrics lacks standing to bring those infringement claims because it assigned away all rights to sue and recover for past, present and future infringement to Trendtex Holding, LLC ("Trendtex Holding") without Trendtex Holding being in the case. In addition, Plaintiffs cannot prevail on their infringement claims because NTKN's accused products were made from fabrics purchased directly from Trendtex Fabrics, or its predecessor-in-interest, HawaiiPrint, over a seventeen-year period more than a decade ago.

Moreover, the outcome of Trendtex's infringement claims is not determinative of NTKN's state tort counterclaims. Trendtex intentionally targeted NTKN customers in bad faith, made false allegations that NTKN produced counterfeit garments to ruin NTKN's business and reputation, and did so in a harassing and intentionally disruptive manner. As a direct result of Trendtex's calculated strategy, NTKN has suffered significant monetary and reputational

damages.  Because of the genuine disputes of fact regarding the truth or falsity of Trendtex' statements to NTKN's customers, Trendtex's summary judgment motion must be denied.

## II.   BACKGROUND FACTS

Hung Ky, NTKN's founder, began selling Hawaiian apparel from his home in 1992.  (Depo. of Howard Ky ("Ky Depo.") at NTKN's Concise Statement of Disputed Facts ("CSDF") at ¶ 40.)  Mr. Ky founded Ky's International Fashion, Inc. ("Ky's") in 1997 and later dissolved Ky's when Mr. Ky formed NTKN in 2016.  (*Id.* at ¶ 41.)  Ky's fabric inventory and other assets were later transferred to NTKN. (*Id.* at ¶ 42.)

From 1997 to 2014, Ky's purchased large volumes of printed fabrics from Trendtex Fabrics and HawaiiPrint for use by Ky's, and later NTKN, to manufacture clothing. (*Id.* at ¶43.)  Over this 17-year period, Ky's purchased hundreds of thousands of yards of printed fabric. (*Id.* at ¶44.)  NTKN used the purchased fabric in made-to-order or small-batch garments which it sold wholesale.  (*Id.* at ¶45.) When NTKN's warehouse temporarily closed during COVID, NTKN began selling products online.  (*Id.* at ¶46.). NTKN has only used a portion of the original fabric that it purchased directly from Trendtex and Hawaiiprint many years earlier.  (*Id.*at ¶47.)  The remaining fabric is in NTKN's warehouse, and NTKN slowly manufactures this fabric into shirts on a made-to-order basis. (*Id.* at ¶48.)

On October 27, 2021, Trendtex sent a demand letter to NTKN alleging that NTKN was selling products that infringed seven of Trendtex Fabrics' copyrights.

(*Id.* at ¶49.)  The letter threatened to sue NTKN if it didn't pay Trendtex a jaw-dropping sum of $212,000 within 15 days.  (*Id.*).

NTKN responded on February 2, 2022 with copies invoices showing NTKN purchased the accused fabrics directly from Trendtex and HawaiiPrint (the original owner of some of the asserted copyrights) years before.  (*Id.* at ¶50.) The sales records are not comprehensive but have been compiled from hard copy receipts from over a decade ago. (*Id.* at ¶51.)

Trendtex responded by increasing its demand to over $800,000 and sending threatening letters to NTKN's customers. (*Id.* at ¶52.) NTKN continued to demonstrate its innocence, and on June 17, 2022, it provided pictures of fabric in its inventory with the asserted designs and certification marking from Trendtex and HawaiiPrint, indicating that the fabric has been legitimately purchased from the copyright owner. (*Id.* at ¶53.)

Trendtex Fabrics proceeded to file the present lawsuit against NTKN and several of NTKN's customers on June 29, 2022 (Dkt. 1) and a First Amended Complaint ("FAC") adding additional customers on August 15, 2022 (Dkt. 29). Shortly after NTKN filed its counterclaims on September 21, 2022 (Dkt. 54), Trendtex Fabrics assigned the Asserted Copyrights to a shell company called Trendtex Holding. (Dkt. 167-1 at 2, "Beginning in the fall of 2022, Trendtex Fabrics began assigning its copyright portfolio, including all of the copyrights at issue in this action, to a new entity named Trendtex Holding, LLC").)

Trendtex admits that the assignment included *all rights* to the Asserted Copyrights, including the "right to sue for past, present, and future infringements."

(Dkt. 167-1 at 2.)   Plaintiffs never informed NTKN of this fact. (*Id.* at ¶54.) Although Trendtex Fabrics no longer owned the rights to sue or maintain suit for infringement of the Asserted Copyrights, Trendtex Fabrics continued to assert its infringement claims against NTKN and the other defendants, including Tropiholic, Inc., Shaka Time, Inc., Leilani's Attic, Inc., Hawaii Hangover, LLC and Mark Madl, d/b/a Cities Fashion.[1]   Plaintiffs attempted to fix this problem by adding Trendtex Holding to Plaintiffs' Second Amended Complaint ("SAC") on June 2, 2023 without informing NTKN or the Court of the issue.  (Dkt. 99). However, the SAC was not filed until many months *after* Trendtex Fabrics' assignment of the rights to enforce the Asserted Copyrights to Trendtex Holding.

Meanwhile, Trendtex Fabrics went beyond trying to enforce rights, and instead asserted rights it no longer owned against NTKN's customers, forcing them to enter settlement agreements with exorbitant liquidated damage provisions if they discussed the case, even with NTKN. (CSDF at ¶56.)   Trendtex then attempted to hide its conduct by refusing to produce copies of the assignment and settlement agreements.  (Dkt. 153).

---

[1] Trendtex asserts that Trendtex Holding exclusively licensed the copyrighted designs back to Trendtex Fabrics so it "could continue selling fabrics to garment makers as before." (Dkt. 167-1 at 2.)  However, Trendtex does not allege that it licensed back the right to sue. (*Id.*)  Moreover, Trendtex has refused to produce any assignment or license between Trendtex Fabrics and Trendtex Holding, despite numerous discovery requests calling for the information. (CSDF. at ¶55.).  Trendtex should be precluded from relying on any newly-disclosed assignment or license. *See* Fed. R. Civ. P. 37(c)(1).

### III. <u>LEGAL STANDARD</u>

Summary judgment is appropriate if the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are facts that, under the governing substantive law, may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* The party moving for summary judgment bears the burden of establishing the absence of a genuine issue of material fact. *See Celotex,* 477 U.S. at 322-23.

### IV. <u>ARGUMENT</u>

#### A. **Trendtex Fabrics' MSJ Should Be Denied Because There Exist Genuine Issues of Material Fact Regarding NTKN's Counterclaim for Intentional Interference with Prospective Business Advantage**

NTKN has asserted a counterclaim for intentional interference with prospective business advantage. (Dkt. 108-1 at ¶¶ 31-39.) To prevail on the claim, a party must show:

> (1) the existence of a valid business relationship or a prospective advantage or expectancy sufficiently definite, specific, and capable of acceptance in the sense that there is a reasonable probability of it maturing into a future economic benefit to the plaintiff; (2) knowledge of the relationship, advantage, or expectancy by the defendant; (3) a purposeful intent to interfere with the relationship, advantage, or expectancy; (4) legal causation between the act of interference and the impairment of the relationship, advantage, or expectancy; and (5) actual damages.

*Bodell Constr. Co. v. Ohio Pac. Tech., Inc.*, 458 F. Supp. 2d 1153, 1163 (D. Haw. 2006) (denying motion for summary judgment finding that a reasonable jury could find that plaintiff intended to harm defendant's business relationship and did so without justification), *quoting Robert's Hawaii School Bus, Inc. v. Laupahoehoe Transp. Co.*, 91 Haw. 224, 258, 982 P.2d 853, 887 (Haw. 1999).

Trendtex Fabrics does not dispute the existence of elements 1, 2, 4 and 5[2] and, instead, argues that NTKN cannot prove element 3 (purposeful intent) because a party alleging this tort must also prove that "defendant acted without proper justification." (Dkt. 170-1 at 14-15, *citing Whitey's Boat Cruises, Inc. v. Napali-Kauai Boat Charters, Inc.,* 110 Haw. 302, 317, 132 P.3d 1213, 1228 (2006)).

Trendtex argues that NTKN cannot show Trendtex acted without proper justification when it sought to protect its economic interests by issuing cease and desist letters" to NTKN's customers.  (Dkt. 170-1 at 15). Trendtex insists its cease-and-desist letters to NTKN's customers were innocent attempts to enforce its rights. (*Id.*) However, Trendtex has repeatedly demonstrated that its actions are motivated by more than a desire to enforce its rights. Trendtex has shown an unjustified attempt to harm NTKN and extract a huge payment unrelated to the actual alleged infringement itself, which was *de minimus*. For example, Trendtex went well beyond "justified" enforcement of its rights when it strong-armed NTKN's customers into agreeing not to discuss their settlement agreements under the penalty of exorbitant

---

[2] There is ample evidence to support the elements of the intentional interference with prospective business advantage claim. NTKN does not discuss them in this Opposition because Trendtex limits its discussion in the MSJ to only element 3 (purposeful intent). (Dkt. 170-1 at 14-15).

liquidated damage provisions. (CSDF at ¶56.)  This punitive provision has frightened NTKN's customers from even conducting business with NTKN. Trendtex could have attempted to enforce its alleged rights in a way that did not drive irreparable wedges between NTKN and its customers, but it knowingly and intentionally chose this destructive approach instead.

Additionally, as detailed in NTKN's Opposition to Plaintiffs' MPSJ, Trendtex Fabrics did not own the right to enforce the copyrights in at least one instance when it coerced NTKN's customer, Tropiholics, into settling.  (NTKN Opp'n to MPSJ (Dkt 175) at 4.)

In these instances, even if the text of the cease-and-desist letters included allegations that Trendtex believed to be true, there is still a genuine issue of material fact as to whether Trendtex harmed NTKN's relationships with its customers for a justified reason (enforcing its copyrights) or an unjustified reason (harming a competitor and obtaining a windfall judgment) based on Trendtex's other behavior. This genuine dispute becomes particularly clear when the evidence is viewed in the light most favorable to NTKN, as is required at this stage. Under these circumstances, a reasonable jury could determine that the harm Trendtex has caused to NTKN's relationships with its customers was not justified, and summary judgment should be denied. *See Bodell*, 458 F.Supp.2d at 1166.

Trendtex knew its conduct was unlawful and went to great lengths to hide its actions, going so far as to threaten NTKN's customers with litigation and/or damages if they spoke out.  Indeed, Trendtex used these threats as a weapon to harm NTKN's business and reputation in bad faith.

Trendtex points to *In Meridian Mortgage, Inc. v. First Hawaiian Bank*, 109 Haw. 35, 48, 122 P.3d 1133 (App. 2005) to support its Motion. However, the facts of that case paint a very different picture from the situation in this case, and the holding is inapplicable here. In *Meridian Mortgage*, the court held that Meridian did not present any evidence FHB intentionally induced third parties to stop doing business with Meridian. *Id.* at 1144. FHB did not know about Meridian's business relationships with these third parties until months after FHB independently contacted them. *Id.* at 1146. Because FHB lacked knowledge of that business relationship at the time it procured the financing commitment, "FHB could not possess a purposeful intent to interfere with that relationship." *Id*. That is significantly different from the instant case. Here, Trendtex knew the third parties it was contacting were NTKN's customers. Indeed, the evidence demonstrates that Trendtex was threatening these third parties *because* of their business relationships with NTKN.

NTKN has provided evidence that Trendtex Fabrics purposefully interfered with NTKN's business relationships with its existing and potential customers. Because there is a genuine dispute as to this material fact – the only element that Trendtex argues is missing – summary judgment on NTKN's intentional interference counterclaim is inappropriate and this issue should proceed to trial.

### B. Trendtex Fabrics' MSJ Should Be Denied Because of the Genuine Issues of Material Fact Regarding NTKN's Counterclaim for Business Disparagement

NTKN asserted a second counterclaim for business disparagement. (Dkt. 108-1 at ¶¶ 40-44.)  A claim for trade libel or disparagement requires: (1) a

publication; (2) which induces others not to deal with plaintiff; and (3) special damages. *See Hawaiian Ins. & Guar. Co. v. Blair, Ltd.*, 726 P.2d 1310, 1315 (Haw. App. 1986) (quoting *Nichols v. Great Am. Ins. Co.* 169 Cal.App.3d 766, 773 (1985)). This includes "the publication of matter disparaging the quality of another's land, chattels or intangible things, that the publisher should recognize as likely to result in pecuniary loss to the other through the conduct of a third person in respect to the other's interests in the property." Restatement (Second) of Torts § 626 (1977).

Trendtex's only argument against NTKN's business disparagement claim is that its letters to NTKN's customers cannot be false (and therefore cannot be disparagement) because its expert report says there is infringement. (Dkt. 170-1 at 16.) That is not an appropriate argument to obtain summary judgment, particularly when NTKN has presented significant evidence that there is no infringement. (*See* Dkt. 175 at 8-11.)

In attempting to make its limited point, Trendtex relies on *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980 (9th Cir. 2017) for the proposition that summary judgment is appropriate where independent creation of asserted work is unlikely because of the overwhelming similarities between the asserted work and accused product. (Dkt. 170-1 at 16.) Here, however, NTKN's non-infringement position does not rest on the contention that it independently created the designs on the accused shirts. Instead, NTKN asserts that it obtained the accused shirts <u>directly from Trendtex</u> (or its predecessor). It is therefore unsurprising that the designs on the accused shirts are "overwhelmingly identical" to the copyrighted designs. As such, *Unicolors* has no bearing on this analysis.

When the evidence (including the manner in which Trendtex pursued the enforcement of its rights, the liquidated damages provisions in the settlement agreements, and Trendtex's pursuit of recovery without having standing) is viewed in the light most favorable to NTKN, there remain material factual disputes as to the falsity of Trendtex's statements to NTKN's customers. Consequently, summary judgment is inappropriate, and these questions should be presented to and resolved by a jury.

### C. Trendtex Fabrics' MSJ Should Be Denied Because There Exist Genuine Issues of Material Fact Regarding NTKN's Counterclaim for Unfair and Deceptive Trade Practices

NTKN's third counterclaim is for Unfair and Deceptive Trade Practices under Chapter 481A(3)(a)(8). (Dkt. 108-1, ¶¶45-50.) Trendtex's only argument against NTKN's deceptive trade practices claim is that Trendtex's letters to NTKN's customers cannot be "false or misleading representations of fact" where NTKN "violated Trendtex's valid and enforceable copyrights." (Dkt. 170-1 at 19.) However, as discussed above in Sections IV(A) and (B), Trendtex's assertion is insufficient for summary judgment because NTKN has presented significant evidence that there is no infringement. (Dkt. 175 at 8-11.)

Because there are a genuine dispute regarding the whether Trendtex made false or misleading representations of fact that disparaged NTKN's reputation and products, Trendtex's motion for summary judgment on NTKN's unfair and deceptive trade practices counterclaim should be denied.

## V. CONCLUSION

For the foregoing reasons, NTKN respectfully requests the Court deny Trendtex Fabrics' MPSJ in its entirety.

DATED: Honolulu, Hawai'i, March 22, 2024.

/s/ *Rex Y. Fujichaku*
REX Y. FUJICHAKU
DAVID M. PLONA
LENA N. BACANI (*pro hac vice*)

Attorneys for Defendants/Counterclaim Plaintiffs NTKN, INC. and HUNG KY