IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| TRENDTEX FABRICS, LTD., a Hawaii Corporation; and TRENDTEX HOLDING, LLC, a Hawaii limited liability company,<br><br>       Plaintiffs,<br><br>    vs.<br><br>NTKN, INC., a Hawaii corporation; and HUNG KY, an individual,<br><br>       Defendants. | Civil No. 22-00287 MWJS-KJM<br><br>ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, GRANTING IN PART AND DENYING IN PART COUNTERCLAIM DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AGAINST COUNTERCLAIMANT, AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT |
| NTKN, INC., a Hawaii corporation,<br><br>       Counterclaim Plaintiff,<br><br>    vs.<br><br>TRENDTEX FABRICS, LTD., a Hawaii corporation,<br><br>       Counterclaim Defendant. | |

## **INTRODUCTION**

In this case, Trendtex Fabrics, Ltd., and Trendtex Holding, LLC, accuse NTKN, Inc., and its owner, Hung Ky, of selling aloha attire that infringes on their copyrighted designs.  Three motions are currently before the Court.  First,

Plaintiffs move for partial summary judgment on twelve of their twenty-six claims of copyright infringement.  Trendtex Fabrics, in its capacity as a counterclaim defendant, also moves for summary judgment on the three state-law claims brought by counterclaimant NTKN.  And Defendants countermove for summary judgment for an alleged lack of standing.

The Court first finds that Trendtex Holding, but not Trendtex Fabrics, has standing to pursue the infringement claims, and Defendants' countermotion for summary judgment is GRANTED IN PART and DENIED IN PART.  The Court next finds that a dispute of material fact exists for the twelve claims of infringement, and therefore Plaintiffs' motion for partial summary judgment is DENIED.  But because the parties agree that the designs on the allegedly infringing garments are identical to the copyrighted designs, the Court deems that fact established in this case pursuant to Federal Rule of Procedure 56(g).  Finally, the Court concludes that Trendtex Fabrics has shown that NTKN lacks sufficient evidence to sustain two of its three state-law claims, and Trendtex Fabrics's motion for summary judgment on the counterclaims is therefore GRANTED IN PART and DENIED IN PART.

# BACKGROUND

## A.     Factual Background

Trendtex Fabrics is a longtime seller of aloha-print fabrics.  Since 1984, Trendtex Fabrics has sold fabrics with its copyrighted aloha-print designs in a variety of colors and materials.  ECF No. 168, at PageID.1789 (Pls.' Concise Statement of Facts (CSF) ¶ 1).  Over the years, Trendtex Fabrics has owned hundreds of copyrights in textile designs.  *Id.* (¶ 2).  And in 2015, Trendtex Fabrics expanded its portfolio by acquiring HawaiiPrint, Inc., another fabric seller.  *Id.*

Hung Ky was a customer of both Trendtex Fabrics and HawaiiPrint.  Ky co-owned Ky's International Fashion, Inc., which purchased fabrics from Trendtex Fabrics and HawaiiPrint for about twenty years.  *Id.* at PageID.1790 (¶¶ 6, 7); ECF No. 176, at PageID.2149 (Defs.' CSF ¶ 43).  In 2016, Hung Ky formed NTKN, Inc., by dissolving Ky's International Fashion and absorbing its fabrics and other assets.  ECF No. 176, at PageID.2149 (Defs.' CSF ¶¶ 41, 42).  Although its corporate structure had changed, its business stayed the same:  buy aloha-print fabrics, manufacture garments in small batches, and sell wholesale to retailers.  *Id.* at PageID.2137 (¶¶ 8, 9); *id.* at PageID.2149 (¶ 45).  During the COVID-19 pandemic, NTKN began selling its products online, directly to customers.  *Id.* at PageID.2149 (¶ 46).

All told, NTKN and Ky's International purchased thousands of yards of fabric from Trendtex Fabrics and HawaiiPrint.  *Id.* (¶¶ 43, 44).  Among those purchases, the parties agree, are fabrics with the twelve designs at issue on Plaintiffs' motion for partial summary judgment.  *See id.* at PageID.2149-50 (¶¶ 49-60); ECF No. 189, at PageID.2437-38 (Pls.' CSF ¶¶ 49-60).

That is largely where the agreement ends, for the parties dispute what background colors and materials those designs were printed on.  *See* ECF No. 176, at PageID.2137-42 (Defs.' CSF ¶¶ 10-12, 14-22).  Plaintiffs claim to have an electronic database of all of Trendtex Fabrics's sale transactions since 1987, as well as an electronic database of all of HawaiiPrint's sales from 1994 until its 2015 acquisition.  ECF No. 189-2, at PageID.2452-53 (Hamai Suppl. Decl. ¶¶ 8-9).  According to Plaintiffs, these records identify the design, color, and material for every sale between Ky's International Fashion and both Trendtex Fabrics and HawaiiPrint.  *See id.*

Defendants insist that these records are incomplete, for they received these designs in additional colors and materials.  *See* ECF No. 176, at PageID.2150 (Defs.' CSF ¶ 61).  They claim that some invoices were kept only as paper copies.  *Id.* at PageID.2151 (¶ 69).  They also state that the records do not include fabric samples.  *Id.* (¶ 70).  And most critically, Defendants allege that these records fail to account for fulfillment errors; sometimes, Defendants say, Trendtex Fabrics or

HawaiiPrint would ship an order in colors that differed from the original sample. *Id.* at PageID.2150 (¶ 62).  Rather than return the non-conforming fabric, Defendants would often just use it to make garments.  *Id.* at PageID.2150-51 (¶¶ 63, 65).

Such errors, according to Trendtex Fabrics, are impossible.  Whenever an order is placed, a factory prints the requested design on a single, continuous piece of fabric.  ECF No. 189-2, at PageID.2454 (Hamai Suppl. Decl. ¶ 12).  The printer then cuts out portions of the fabric as "hanger samples," which it immediately ships to Trendtex Fabrics.  *Id.* (¶¶ 12, 13).  Trendtex Fabrics shows these samples to customers for their approval before the rest of the order is shipped.  *Id.* (¶ 13).  If a design is misprinted, the hanger sample would be too.  *Id.* at PageID.2457 (¶ 18). Trendtex Fabrics claims to have kept a hanger sample for every printing of its designs.  *Id.* at PageID.2454-55 (¶ 14).  Because HawaiiPrint followed the same process, and because Trendtex Fabrics acquired all of those hanger samples, Plaintiffs claim to have samples of every printing of every Trendtex Fabrics and HawaiiPrint design ever run.  *See* ECF No. 189, at PageID.2442 (Pls.' CSF ¶¶ 82-84); ECF No. 168, at PageID.1793 (Pls.' CSF ¶ 39).

The specific facts underlying this case arose in the fall of 2021, when Trendtex Fabrics noticed garments for sale with its copyrighted designs, but in colors and on materials it had never sold.  ECF No. 168, at PageID.1793 (Pls.' CSF

5

¶ 38).  Trendtex Fabrics suspected that NTKN was selling garments with unauthorized reproductions of its fabrics, *id.*, and it issued a cease-and-desist letter, ECF No. 178, at PageID.2229-30 (Defs.' CSF ¶ 49).  NTKN replied in February 2022, stating that it had not infringed on the identified copyrights.  *Id.* at PageID.2230 (¶ 50).  Trendtex Fabrics responded with another letter and a draft complaint, and it sent similar letters to retailers of Ky's products.  *Id.* (¶ 52).  NTKN again denied the charges.  *Id.* (¶ 53).

Unsatisfied with NTKN's response, Trendtex Fabrics sued in June 2022, alleging fifteen claims of infringement against NTKN, Hung Ky, and certain retailers of Ky's garments.  ECF No. 1.  Two months later, it added more infringement claims in an amended complaint.  ECF No. 29.

As the litigation progressed, Trendtex Fabrics began to assign its copyrights to Trendtex Holding.  From November 2022 to April 2023, over the course of several transactions, Trendtex Fabrics assigned the copyrights at issue in this case, along with their accrued causes of action, to Trendtex Holding.  ECF No. 189, at PageID.2441-42 (Pls.' CSF ¶¶ 77-81); ECF No. 176, at PageID.2136 (Defs.' CSF ¶ 3).  And on the same day as each of those assignments, Trendtex Holding exclusively licensed certain rights in those copyrights—but not the right to sue for past infringement—back to Trendtex Fabrics.  ECF No. 189, at PageID.2441-42 (Pls.' CSF ¶¶ 77-81).

Plaintiffs filed a second amended complaint in June 2023, adding Trendtex Holding as a plaintiff along with several retailers of the allegedly infringing garments as defendants.  ECF No. 99.  In response, NTKN asserted three counterclaims against Trendtex Fabrics, all of which essentially allege that Trendtex Fabrics unlawfully interfered with NKTN's relationships with retailers. ECF No. 108-1.

As the case went on, the defendant retailers entered settlement agreements with Plaintiffs, *see* ECF No. 198, and were dismissed from the action, one by one, *see, e.g.*, ECF Nos. 127, 143, 145, 149.  And now, only two defendants remain— Hung Ky and NTKN.

### B.      The Three Present Motions

The parties filed three summary judgment motions.  First, Plaintiffs move for partial summary judgment against NTKN and Ky on twelve counts of infringement.  ECF No. 167.  Plaintiffs contend that, for each of these counts, Defendants sold garments with Plaintiffs' copyrighted designs in colors and materials that were not sold or manufactured by Plaintiffs.  NTKN and Ky respond that these fabrics were purchased directly from Trendtex Fabrics and HawaiiPrint.

Trendtex Fabrics also moves for summary judgment on the counterclaims asserted against it by NTKN:  intentional interference with prospective business advantage, business disparagement, and deceptive trade practices.  ECF No. 170.

Trendtex Fabrics alleges that its actions were appropriate because it believed that NTKN was, in fact, infringing on its copyrights.  NTKN, for its part, argues that genuine disputes of material fact remain.

Finally, in their opposition to the partial summary judgment motion, Defendants counter-move for summary judgment, arguing that Trendtex Fabrics forfeited its standing when it assigned the copyrights and the accrued causes of action to Trendtex Holding.  ECF No. 175.  And Trendtex Holding, according to Defendants, cannot be added as a plaintiff this far into the suit.  Plaintiffs insist they both have standing, as any owner or licensor of an exclusive right in a copyright can sue on past claims of infringement.

The Court held a hearing on the three motions on May 15, 2024.  ECF No. 210.

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted where a movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The movant bears the initial burden of demonstrating the absence of any genuine disputes of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To meet that burden, a party seeking summary judgment on their own claim "must offer evidence sufficient to support a finding upon every element of [their]

claim," except for those elements conceded by the opposing party. *Watts v. United States*, 703 F.2d 346, 347 (9th Cir. 1983) (quoting *United States v. Dibble*, 429 F.2d 598, 601 (9th Cir. 1970)). On the other hand, when a party seeks summary judgment on a claim asserted against them, they must show that the opposing party cannot prove an essential element of the claim. *See Celotex Corp.*, 477 U.S. at 324-25.

If the movant makes that showing, the burden shifts to the opposing party, who must "set forth specific facts that show a genuine issue for trial." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (internal quotation marks omitted). This burden "is not a heavy one," as "the nonmoving party simply is required to show specific facts, as opposed to general allegations, that present a genuine issue worthy of trial." *Dark v. Curry County*, 451 F.3d 1078, 1082 n.2 (9th Cir. 2006) (internal quotation marks omitted).

A court may not grant summary judgment if the evidence could be subject to conflicting interpretations, which could lead to different understandings of a material fact. *See United States v. Perry*, 431 F.2d 1020, 1022 (9th Cir. 1970). Questions of credibility, moreover, must be reserved for the jury. *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). And throughout, the Court must construe all facts and draw all inferences in favor of the nonmoving party. *Id.* at 631.

## DISCUSSION

Before the Court are three motions.  The first is Plaintiffs' motion for partial summary judgment on twelve of its copyright infringement claims.  The second is Trendtex Fabrics's motion for summary judgment on the counterclaims pressed by NTKN.  And third is NTKN's countermotion for summary judgment, which argues that Trendtex Fabrics and Trendtex Holding lack standing to continue this action. The Court considers them in turn, beginning with the threshold standing issue.

### A.    Trendtex Holding Has Standing, But Trendtex Fabrics Does Not

In their countermotion, Defendants argue that both Plaintiffs lack standing.[1] Trendtex Fabrics lost standing, according to Defendants, when it assigned away its copyrights to Trendtex Holding.  And Defendants claim that Trendtex Holding cannot now acquire standing that it lacked at the commencement of this suit.  The Court agrees that Trendtex Fabrics no longer has standing but concludes that Trendtex Holding does.

---

[1]    The parties dispute the timeliness of this countermotion.  Plaintiffs primarily argue that Defendants improperly filed a countermotion after the March 1, 2024, deadline for dispositive motions.  Defendants respond that they were not aware of the full extent of the assignments until Plaintiffs' opening briefs, for Plaintiffs had failed to produce the assignment agreements.  And in any case, Defendants say, Local Rule 7.7 permits countermotions to be filed with opposition briefs. Regardless of the motion's timeliness, the Court has an "independent obligation" to confirm that constitutional "standing exists."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009).  It therefore must consider the standing question.

As an initial matter, whether a plaintiff can sue for infringement under the Copyright Act is generally a matter of statutory, not constitutional, standing.  *See Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997, 1001 (9th Cir. 2015).  Statutory standing is a non-jurisdictional question of whether the statute creates a cause of action.  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 & n.4 (2014).  Constitutional standing, on the other hand, stems from Article III's limitation of federal court jurisdiction to "Cases" and "Controversies," and it requires plaintiffs to have suffered an injury in fact caused by the defendants' conduct and redressable by a favorable judicial decision.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992); U.S. Const. art. III, § 2, cl. 1.

In this case, the parties blur the distinction between the two.  Defendants appear to argue that Plaintiffs do not fall within the Copyright Act's cause of action while simultaneously citing cases that implicate constitutional standing.  ECF No. 175, at PageID.2121-22 (discussing the right to sue for past infringement but citing *Lujan*, 504 U.S. 555).  And Plaintiffs suggest that the constitutional standing inquiry turns on having a statutorily recognized ownership interest in one of a copyright's exclusive rights.  *See* ECF No. 188, at PageID.2414 (quoting the constitutional standing test and stating that "a plaintiff's standing requires an actual ownership interest in one of the exclusive rights enumerated in 17 U.S.C. § 106").

The parties, then, effectively agree that the only potential Article III injury here is the violation of Plaintiffs' statutory rights under the Copyright Act. *See Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1169 (9th Cir. 2013) (suggesting that, where plaintiff does not allege a separate injury in fact, constitutional standing requires having a statutory right to sue). The Court therefore accepts that, absent the identification of a separate injury in fact, the constitutional and statutory standing inquiries have merged: for either Trendtex Fabrics or Trendtex Holding to have constitutional standing, they must have a statutory right to sue.

To have that right to sue, a plaintiff must be "[t]he legal or beneficial owner of an exclusive right under a copyright." 17 U.S.C. § 501(b). Every copyright has up to five exclusive rights, which may be unbundled and separately assigned or licensed. *Silvers v. Sony Pictures Enter., Inc.*, 402 F.3d 881, 886 (9th Cir. 2005) (citing 17 U.S.C. § 106). And an owner or exclusive licensee of a particular right may sue for "any infringement of that particular right committed *while he or she is the owner of it*." 17 U.S.C. § 501(b) (emphasis added).

Generally, however, an assignment of a copyright does not include the right to sue for *past* infringement. 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.02(C) (2024). For a new owner to sue for infringements that occurred prior to their ownership, the accrued causes of action must be explicitly conveyed in addition to the copyright right itself. *Id.*; *see also Silvers*, 402 F.3d at

12

890 & n.1 (agreeing with the Second Circuit that a new copyright owner could sue past infringers when it "purchased *both* the copyright *and* accrued claims" (citing *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991))). *Cf. Crown Die & Tool Co. v. Nye Tool & Mach. Works*, 261 U.S. 24, 43 (1923) (recognizing that an assignee of a patent can sue past infringers if the "owner assigns the patent and also the claim for past infringements to the same person").

When it filed this suit in June 2022, Trendtex Fabrics owned the full bundle of rights in the twenty-six copyrights at issue in this case. The parties do not dispute that Trendtex Fabrics had standing to initiate this action. *See* ECF No. 176, at PageID.2136 (Defs.' CSF ¶¶ 2, 3) (disputing that Trendtex Fabrics presently has a copyright portfolio, but not that it owned the copyrights when it brought this suit).

Things changed five months after filing suit. In separate transactions over the span of six months, Trendtex Fabrics assigned ownership of the relevant copyrights to Trendtex Holding. *Id.* (¶ 3); ECF No. 189, at PageID.2441-42 (Pls.' CSF ¶¶ 77-81). Each of those assignment agreements expressly conveyed the right to sue for past infringements. ECF No. 176, at PageID.2136 (Defs.' CSF ¶ 3). On the same day of those assignments, an exclusive license was issued back to

Trendtex Fabrics.  ECF No. 168, at PageID.1789 (Pls.' CSF ¶ 4).  Those licensing

agreements, however, did not include the right to sue for past infringements.[2]

_____

[2]      Because Plaintiffs produced the assignment agreements after the close of
discovery, Magistrate Judge Kenneth Mansfield granted Defendants' motion to
exclude the agreements from evidence.  ECF No. 211.  The Court need not
consider the agreements themselves to decide this motion, for the parties agree on
the material facts:  The parties do not dispute that the copyrights at issue in this
case were assigned to Trendtex Holding, along with their rights to sue for past
infringement.  *See* ECF No. 168, at PageID.1789 (Pls.' CSF ¶ 3); ECF No. 176, at
PageID.2136 (Defs.' CSF ¶ 3); ECF No. 188, at PageID.2414 (Pls.' Reply Br.)
(stating that the assignments to Trendtex Holding included "the right to sue for past
infringements").  And the parties do not dispute that certain rights were exclusively
licensed back to Trendtex Holding, but the right to sue for past infringement was
not among them.  *See* ECF No. 175, at PageID.2122 (Defs.' Opp'n Br. & Counter-
Mot.) (pointing out that "Trendtex Fabrics assigned away the right to sue for past
infringement" but Plaintiffs "make no attempt to claim that Trendtex Fabrics ever
received [that] right back via license"); ECF No. 188, at PageID.2414-19 (Pls.'
Reply Br.) (not disputing that Trendtex Fabrics did not receive the right to sue for
past infringement).

         While Plaintiffs assert that Trendtex Fabrics assigned twelve copyrights to
Trendtex Holding, *see* ECF No. 189, at PageID.2441-42 (Pls.' CSF ¶¶ 77-81), they
do not specifically allege that Trendtex Fabrics also assigned the other fourteen
copyrights at issue in this case.  But they do claim that "Trendtex Fabrics began
assigning the copyrights at issue *in this action*, including the right to sue for past
. . . infringements, to a new entity named Trendtex Holding."  ECF No. 176, at
PageID.2136 (Defs.' CSF ¶ 3) (emphasis added).  Absent any evidence to the
contrary, this allegation suggests that *all* the copyrights in this case were assigned
to Trendtex Holding, along with the right to sue for past infringement.  Moreover,
even after Defendants alleged that Trendtex Fabrics had "assigned away the right
to sue for past infringement" and thus lacked standing as to any of the twenty-six
copyrights, ECF No. 175, at PageID.2122, Plaintiffs did not contend that this right
was assigned away for anything less than all twenty-six copyrights.  Given the
parties' representations, the Court must accept that all twenty-six copyrights were
treated the same:  they were assigned in their entirety to Trendtex Holding, and
certain rights—but not the right to sue for past infringements—were licensed back
to Trendtex Fabrics.

According to Defendants, the standing problems arise here.  They contend that Trendtex Fabrics gave away the right to sue for past infringements and never received it back.  And Defendants say that even though Trendtex Holding now holds that right, it cannot acquire standing in the middle of a lawsuit.

In response, Plaintiffs argue that the right to sue for past infringement lies with a copyright's current owner or exclusive licensee.  Trendtex Fabrics, the argument goes, has an exclusive license to several of the copyright rights and thus, for each of those rights, can pursue the accrued causes of action.  Trendtex Holding, according to Plaintiffs, retains the right to create derivative works and to publicly display works, and it can therefore sue past infringers of those specific rights.  Under Plaintiffs' theory, the fact that the assignment agreements expressly mentioned the right to sue for past infringement is irrelevant—that right automatically accompanies an exclusive right in the copyright.

Plaintiffs' theory is mistaken.  Accrued causes of action only transfer to a new owner if they are "expressly included in the assignment."  *ABKCO Music, Inc.*, 944 F.2d at 980; *see also Silvers*, 402 F.3d at 890 & n.1 (endorsing the Second Circuit's holding in *ABKCO Music*); Nimmer & Nimmer, *supra*, § 12.02(C) ("[A] grant of copyright . . . is generally construed not to assign existing causes of action, unless expressly included.").  While there was such an express conveyance *to* Trendtex Holding, there was no such conveyance *back* to

15

Trendtex Fabrics.  Trendtex Fabrics has therefore lost the requisite interest to

pursue this suit, and the Court must dismiss Trendtex Fabrics from this action.  *See*

*Trendtex Fabrics, Ltd. v. Bonnie Brown Designs, Inc.*, No. 23-cv-20291, 2023 WL

4704008, at *6 (S.D. Fla. July 24, 2023) (dismissing Trendtex Fabrics for lack of

standing where it assigned the copyrights and the "right to recover for past

infringements of the copyrights" to Trendtex Holding).

　　　　Trendtex Holding has standing, however, as it possesses the right to sue for

past infringements for all of the copyrights at issue in this case.  Its interest in these

copyrights affords it both constitutional standing and a cause of action under the

Copyright Act.

　　　　Defendants resist this conclusion.  First, while admitting that Trendtex

Holding would have standing to bring a new infringement suit, Defendants contend

that Trendtex Holding must be dismissed from this case because "subject matter

jurisdiction must exist as of the time the action is commenced."  ECF No. 195, at

PageID.2627 (quoting *Morongo Band of Mission Indians v. Cal. State Bd. of

Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988)).  Second, because there was a

period of time between the final assignment agreement and the addition of

Trendtex Holding as a plaintiff, Defendants argue that the entire case must be

dismissed on grounds of mootness.

16

The rules of standing are not so unforgiving.  Consider *Northstar Financial Advisors Inc. v. Schwab Investments*, in which an investment firm sued a mutual fund on behalf of its investors.  779 F.3d 1036, 1043 (9th Cir. 2015).  The firm lacked standing at the start of the suit, as it owned no shares in the defendant mutual fund and none of its investors had assigned the plaintiff firm their claims against the fund.  *Id.*  Over three months after commencing the action, the plaintiff firm filed an amended complaint, alleging that it now had an assignment of claim. *Id.*  The district court construed the amended complaint as a supplemental pleading under Rule 15(d) and, because the plaintiff firm now had a proper interest in the dispute, held that the new pleading cured the standing deficiency.  *Id.* at 1044.

The Ninth Circuit affirmed.  True, subject matter jurisdiction normally must exist at the time of filing.  But that rule "does not extend to supplemental pleadings filed pursuant to [Rule] 15(d)."  *Id.* at 1046.  Rule 15(d), the Ninth Circuit held, allows parties to file a "supplemental pleading to correct a defective complaint and circumvent[] 'the needless formality and expense of instituting a new action when events occurring after the original filing indicated a right to relief.'"  *Id.* at 1044 (quoting 6A Charles A. Wright, Arthur Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1505 (3d ed.)).  It did not matter that the plaintiff firm lacked standing for over three months.  The filing of the amended complaint— construed as a supplemental pleading under Rule 15(d)—cured this jurisdictional

defect.  *Id.*; *see also Scahill v. District of Columbia*, 909 F.3d 1177, 1184 (D.C.

Cir. 2018) (relying on *Northstar* to "hold that a plaintiff may cure a standing defect

under Article III through an amended pleading alleging facts that arose after filing

the original complaint").

      The Court takes the same approach here.  The second amended complaint is

properly construed as a supplemental pleading, for it adds allegations about

assignments and licenses that occurred *after* the commencement of the suit.[3]  ECF

No. 99, at PageID.1035 (¶ 12).  As *Northstar* requires, the Court evaluates standing

as of the filing of the supplemental pleading.  And at that moment, Trendtex

Holding had standing.

      For these reasons, the Court GRANTS IN PART and DENIES IN PART

Defendants' countermotion for summary judgment.  Trendtex Holding may

proceed as a plaintiff but Trendtex Fabrics is dismissed.

---

[3]     At the hearing, Plaintiffs agreed that their second amended complaint could
be considered a supplemental pleading under Rule 15(d), although they believed it
not strictly necessary.  Moreover, contrary to Defendants' argument, the fact that
Plaintiffs labelled this pleading "as a 'second amended complaint' as opposed to a
supplemental pleading is immaterial."  *Cabrera v. City of Huntington Park*, 159
F.3d 374, 382 (9th Cir. 1998).  Such "mislabeling is common" and "of no
consequence."  Wright, Miller & Kane, *supra*, § 1504.

**B.    A Genuine Dispute of Material Fact Exists as to the Twelve Infringement Claims in the Motion for Partial Summary Judgment**

Although the Court has dismissed Trendtex Fabrics from this case on standing grounds, Trendtex Holding joined the motion for partial summary judgment in full.  It moves for summary judgment on twelve of its twenty-six claims of copyright infringement.  For each of these twelve claims, Trendtex Holding's allegations are the same:  Defendants sold garments with its copyrighted designs in colors and materials never produced by Trendtex Fabrics or HawaiiPrint.  ECF No. 167-1, at PageID.1729.  According to Trendtex Holding, this means that Defendants are using unauthorized reproductions, which would constitute infringement.  *Id.* at PageID.1727.

For their part, Defendants do not dispute that their products contain designs originally copyrighted by Trendtex Fabrics or HawaiiPrint.  Nor do they dispute the validity of any of the copyrights.  Defendants instead insist that *all* of their fabrics—even the ones with allegedly unauthorized colors and materials—came directly from Trendtex Fabrics or HawaiiPrint.  And because using fabrics purchased directly from Trendtex Fabrics or HawaiiPrint cannot violate their copyrights, *see Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519, 523-24 (2013), Defendants argue that there is no infringement here.

At the heart of this dispute, then, is a single question:  Where is the fabric from?  To prevail, Trendtex Holding must demonstrate that there is no genuine

dispute that the allegedly infringing garments were not made from authentic

Trendtex Fabrics or HawaiiPrint fabrics.  And if Trendtex Holding makes that

showing, Defendants must adduce evidence that makes possible the fact that these

fabrics came directly from Trendtex Fabrics or HawaiiPrint.

     The Court first considers the evidence presented by Trendtex Holding, for

the initial burden is its to bear.  For each of the twelve claims of infringement on

which it now seeks summary judgment, Trendtex Holding identifies the specific

products sold to Defendants and points to evidence that Defendants sold those

same products in unauthorized colors and materials.

     For example, consider the 73142 design, called "Scenic Anthurium."  ECF

No. 168-22, at PageID.1977.  The copyright for this design was registered by

HawaiiPrint in 2012, assigned to Trendtex Fabrics as part of the 2015 acquisition,

and reassigned to Trendtex Holding in 2023.  ECF No. 168-2, at PageID.1800-01

(Hamai Decl. ¶¶ 3-4).  According to Trendtex Holding, this design was sold to

Ky's International Fashion in three colors—black, sage, and white—and all on

rayon poplin.  ECF No. 168, at PageID.1791 (Pls.' CSF ¶ 14).  And as proof, it

points to a 2010 invoice between HawaiiPrint and Ky's International Fashion that,

sure enough, records a transaction for fabric with the "Scenic Anthurium" design

in rayon poplin and in black, sage, and white.  ECF No. 168-22, at PageID.1977.

The invoice lists no other fabrics, colors, or designs.  *Id.*

Trendtex Holding claims that Ky's International Fashion sold shirts with this design in black, sage, and white—and in an unauthorized "blue" color. ECF No. 168, at PageID.1792 (Pls.' CSF ¶ 25). They attach two screenshots as evidence. One is of an Etsy shop called EdensHawaii selling the rayon shirt with the "Scenic Anthurium" design in what looks to be black, sage, white, and blue.[4] *See* ECF No. 168-38, at PageID.2001. And the other is of a listing on Shaka Time—a retailer that sold Ky's garments—selling the same anthurium rayon shirt with a Ky's tag in black, green, white, and what it calls "sky-blue." ECF No. 168-44, at PageID.2008; *see also* ECF No. 168-4, at PageID.1858 (Benitez Decl. ¶ 5) (president of Shaka Time explaining that he sold the anthurium design in black, green, white, and blue). To show that the designs are identical on the authorized shirts and the blue duplicate, Trendtex Holding includes a photo of three hanger samples in black, sage, and white, next to the blue Ky's shirt with the "Scenic Anthurium" design. ECF No. 168-2, at PageID.1814 (Hamai Decl. ¶ 24).

---

[4]     Defendants now dispute that NTKN sells garments on Etsy. ECF No. 176, at PageID.2137 (Defs.' CSF ¶ 9). But in their answer to the second amended complaint, Defendants admitted that NTKN sold products on Etsy. *Compare* ECF No. 99, at PageID.1037 (Compl. ¶ 19) ("NTKN further maintains a seller's account for EDENS HAWAII on www.etsy.com . . . ."); *with* ECF No. 108, at PageID.1229 (Answer ¶ 19) ("Admit."). And in his deposition, Hung Ky acknowledged that NTKN managed the EdensHawaii Etsy store. ECF No. 168-5, at PageID.1892.

Defendants do not dispute most of these factual assertions. They admit that "NTKN, through its predecessor, Ky's International Fashion, Inc.[,] purchased fabrics with the 73142 design directly from HawaiiPrint." ECF No. 176, at PageID.2139 (Defs.' CSF ¶ 14). They further concede that "NTKN sold garments . . . using fabric purchased from HawaiiPrint with the 73142 design." *Id.* at PageID.2142 (¶ 25). And they confess that "NTKN sold garments in a bluish-green color"[5] with this design. *Id.*

On this claim, then, the sole point of factual disagreement is whether this blue "Scenic Anthurium" fabric *also* came from HawaiiPrint. NTKN says it did. As evidence, it cites the declaration of Hung Ky, which states:

> Ky's purchase fabric with the 73142 design directly from HawaiiPrint in multiple colors. Ky's received colors in a light blue-green color with the surface design from the factory. Neither Ky's nor NTKN have purchased this color fabric from any third party. It was purchased from HawaiiPrint.
>
> I don't believe the hang[e]r samples shown on page 8 of Trendtex's Motion for Summary Judgment show all of the sample colors.

ECF No. 176-2, at PageID.2195 (Ky Decl. ¶¶ 24, 25). Defendants offer no other evidence—no corroborating declarations, no pictures, no old invoices—to support

---

[5]   Defendants insist that they sold these garments in a "light bluish-green" — not in "blue." ECF No. 176, at PageID.2142 (Defs.' CSF ¶ 25). Whether the color is most accurately called "blue" or "light bluish-green" is of no moment. The issue is that Trendtex Holding claims HawaiiPrint sold this fabric in three colors to Ky's, which in turn sold this same fabric in four colors.

Ky's specific claim that he received this fabric "in a light blue-green color with the [Scenic Anthurium] design from the factory."  But Defendants do more generally question the accuracy of Trendtex Holding's records.  For example, Ky admits that he is missing some of the paper invoices of his orders with Trendtex Fabrics and HawaiiPrint, and Defendants suggest that Trendtex Holding's records, which date back nearly two decades, are similarly incomplete.  *See id.* at PageID.2194 (¶¶ 12, 13); ECF No. 176, at PageID.2150 (Defs.' CSF ¶ 61).  Ky further claims that fulfillment errors were "not unusual," as deliveries sometimes differed from what was ordered.  ECF No. 176-2, at PageID.2194 (Ky Decl. ¶ 17).  Although he claims to have raised this issue—which Trendtex Holding disputes, ECF No. 189-2, at PageID.2457 (Hamai Suppl. Decl. ¶ 19)—Ky states that he would often just use the faulty fabrics because waiting for a replacement "would take months." ECF No. 176-2, at PageID.2194-95 (Ky Decl. ¶¶ 19, 20).  Trendtex Holding's records, Defendants insist, do not account for these errors.

At the summary judgment stage, the Court must consider whether these allegations create a genuine dispute of material fact.  And on this claim, Defendants have successfully identified such a dispute.

Trendtex Holding's evidence is no doubt compelling.  The purchase records, the hanger samples, and the screenshots of the digital storefronts support a finding

23

that Defendants acquired unauthorized reproductions of the "Scenic Anthurium" design in a blue color and sold them.

Ky's declaration, however, specifically contradicts this fact.  In a sworn declaration, made under penalties of perjury, Ky states that this light blue-green color—the very color that Trendtex Holding claims is unauthorized—was purchased directly from HawaiiPrint and received straight from its factory.  And this assertion comports with Ky's general claim that Trendtex Holding's records are incomplete.  This might be unlikely against the weight of Trendtex Holding's evidence, and Ky's testimony might prove not credible.  But ultimately, those are questions for the jury to resolve.  *See T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  Viewing the facts and drawing inferences in favor of the nonmoving party, a genuine dispute of material fact exists as to whether Defendants acquired the blue 73142 fabric from HawaiiPrint.  Trendtex Holding's motion for summary judgment on this count is therefore denied.

Of the twelve claims that Trendtex Holding seeks summary judgment on, nine others have similar obstacles:

- ***Second claim.***  Trendtex Holding alleges that Ky's International Fashion bought the 73469 design in red, orange, and blue, but NTKN sold garments with the same design in an additional unauthorized turquoise color.  ECF No. 168, at PageID.1791-92 (Pls.' CSF ¶¶ 15, 26).  Ky alleges that he

ordered fabric with this design from HawaiiPrint and that he received a

"light blue-green color" with the 73469 design directly from the factory.

ECF No. 176-2, at PageID.2195 (Ky Decl. ¶ 26).

- **Fourth claim.** Trendtex Holding alleges that Ky's bought the 73614 design

  in a black and red and in a white and red combination, but NTKN sold

  garments with the same design in an additional blue and red combination.

  ECF No. 168, at PageID.1791-92 (Pls.' CSF ¶¶ 17, 28).  Ky alleges that he

  purchased this fabric and received the "'blue' color directly from

  HawaiiPrint."  ECF No. 176-2, at PageID.2196 (Ky Decl. ¶ 30).

- **Fifth claim.** Trendtex Holding alleges that Ky's bought the 73627 design in

  black, navy, and white, but NTKN sold garments with the same design in an

  unauthorized green color.  ECF No. 168, at PageID.1791-92 (Pls.' CSF

  ¶¶ 18, 29).  Ky claims to have ordered fabric with this design from

  HawaiiPrint and to have received a "light blue-green color" with this same

  design directly from the factory.  ECF No. 176-2, at PageID.2196-97 (Ky

  Decl. ¶ 32).

- **Sixth claim.** Trendtex Holding alleges that Ky's bought the 4319B design

  in green, navy, and orange, but NTKN sold garments with the same design

  in an additional unauthorized turquoise color.  ECF No. 168, at

  PageID.1791-92 (Pls.' CSF ¶¶ 19, 30).  Ky alleges that he "purchased fabric

with the 4319B design directly from HawaiiPrint in multiple colors," and that, although he ordered "the green color," the "factory sent a blue-green, 'aqua', color instead."  ECF No. 176-2, at PageID.2197 (Ky Decl. ¶ 34).  Ky claims that he "did not send the fabric back to the factory . . . since it was already purchased and it would take too long to return and get a replacement."  *Id.*

- ***Thirteenth claim.***  The 73269 design, according to Trendtex Holding, was purchased by Ky's in white, yellow, and black in cotton poplin.  *See* ECF No. 168, at PageID.1791-92 (Pls.' CSF ¶ 20); ECF No. 168-28, at PageID.1987 (HawaiiPrint invoice recording order of 73269 design in white, yellow, and black cotton poplin by Ky's International Fashion).  Trendtex Holding claims that Defendants sold this design on rayon fabric in olive, navy blue, purple, and green.  ECF No. 167-1, at PageID.1762 (Mot. Partial Summ. J.).  And as evidence, Trendtex Holding includes a screenshot of Ky's website with several listings of rayon shirts with the 73269 design in four different colors.  ECF No. 168-42, at PageID.2006.  In his declaration, Ky asserts that the 73269 design was an "open print," and Ky was required "to purchase all of the colors, including the purple color they had on rayon."  ECF No. 176-2, at PageID.2197 (Ky Decl. ¶ 36).  Ky claims that he "didn't want the rayon fabric because it didn't sell well," but he took it anyway.  *Id.*

Although Ky does not identify all the colors he allegedly received from HawaiiPrint, he does claim that, for this specific design, he was required to buy a full suite of colors on rayon fabric.

- **Fourteenth claim.** Trendtex Holding alleges that Ky's bought the EH-2E13B design in blue, maize, grey, and white, but NKTN sold garments with the same design in an unauthorized green color.  ECF No. 168, at PageID.1790 (Pls.' CSF ¶ 11); ECF No. 167-1, at PageID.1766.[6]  Ky contends that he ordered this design "in blue but got a lighter greenish-blue from the factory."  ECF No. 176-2, at PageID.2195 (Ky Decl. ¶ 22).  This fabric, Ky insists, "was purchased from Trendtex Fabrics."  *Id.*

- **Fifteenth claim.** Trendtex Holding alleges that Ky's bought the 03780 design in navy, white, and sage, but NTKN sold garments with the same design in an unauthorized black color.  ECF No. 168, at PageID.1792 (Pls.' CSF ¶ 21); ECF No. 167-1, at PageID.1770-71.[7]  Ky alleges that he ordered

---

[6]     Trendtex Holding's motion for partial summary judgment states that Defendants sold these garments in an unauthorized green colorway.  ECF No. 167-1, at PageID.1766-67.  Plaintiffs' Concise Statement of Facts, however, appears to mistakenly alleges that NTKN sold this design not in green, but "in blue."  ECF No. 168, at PageID.1793 (Pls.' CSF ¶ 33).  In any case, Ky specifically alleges that he received a "greenish-blue" color from the factory.  ECF No. 176-2, at PageID.2195 (Ky Decl. ¶ 22).

[7]     Here too, Plaintiffs' Concise Statement of Facts appears to mistakenly alleges that NTKN sold this design "in blue."  ECF No. 168, at PageID.1793 (Pls.'

fabric with this design directly from HawaiiPrint and that he "purchased the black color directly from HawaiiPrint."  ECF No. 176-2, at PageID.2198 (Ky Decl. ¶ 38).

- **Seventeenth claim.**  Trendtex Holding alleges that Ky's bought the EH-2M59 design in red, black, teal, and orange, but NTKN sold garments with the same design in an unauthorized pink color.  ECF No. 168, at PageID.1790 (Pls.' CSF ¶ 12); *id.* at PageID.1793 (¶ 35).  Ky alleges that he received the pink fabric directly from the factory.  ECF No. 176-2, at PageID.2195 (Ky Decl. ¶ 23).

- **Twenty-second claim.**  Trendtex Holding alleges that Ky's bought the 73138 design in black, wine, and white, but NTKN sold garments with the same design in an unauthorized blue color.  ECF No. 168, at PageID.1792-93 (Pls.' CSF ¶¶ 22, 36).  As proof, Trendtex Holding cites to a spreadsheet of sales that appears to include an entry for a sale of a shirt with the 73138 design in blue.  ECF No. 169-2, at PageID.2039.  Rather than claim that a blue color was received directly from the factory, Ky instead alleges that

---

CSF ¶ 34).  But Trendtex Holding's motion for partial summary judgment states that Defendants sold garments with the 03780 design in black, ECF No. 167-1, at PageID.1770-71, and the cited evidence similarly suggests that the allegedly unauthorized reproduction was black, *see* ECF No. 168-49, at PageID.2014 (screenshot of Shaka Time webpage with black shirt for sale).  Defendants also admits that they sold this design in black.  ECF No. 176, at PageID.2146 (Defs.' CSF ¶ 34).

"neither NTKN nor Ky's ever sold this print in blue."  ECF No. 176-2, at

PageID.2198 (Ky Decl. ¶ 40).

On each of these claims, Trendtex Holding points to compelling evidence

that Defendants infringed on its copyrights.  But Hung Ky's declaration

specifically contradicts that evidence, by alleging either that Ky received the

disputed fabric directly from the factory or that he never sold it at all.  And with

those allegations, he successfully identifies a dispute as to a material fact,

precluding summary judgment on any of these ten claims.  *See McLaughlin v. Liu*,

849 F.2d 1205, 1207-08 (9th Cir. 1988) (holding that allegations in a nonmoving

party's declaration must be "taken as true," even if they are "implausible," and can

therefore defeat summary judgment (internal quotation marks omitted)).

Two of the twelve infringement claims remain, both of which present closer

calls.  Begin with the third claim for relief, for infringement of the 73571 design.

Trendtex Holding includes an invoice that records a transaction between

HawaiiPrint and Ky's International Fashion for the 73571 design in white,

burgundy, and black.  *See* ECF No. 168-24, at PageID.1979.  Trendtex Holding

alleges that Ky's International Fashion sold garments with this fabric in an

unauthorized green, blue, and navy.  *See* ECF No. 168, at PageID.1792 (Pls.' CSF

¶ 27).  To support this claim, Trendtex Holding attaches a screenshot of a blue shirt

with the same design listed for sale on Ky's website, *see* ECF No. 168-40, at

PageID.2004; a response to a request for admission, in which Defendants deny selling this design in a navy color but admit to selling this design in both a "bluish" and a green color, *see* ECF No. 168-52, at PageID.2023-24; and a screenshot of an Excel spreadsheet that appears to include orders for a product with the code "LAL-499 NB," which Trendtex Holding suggests is evidence of the sale of this shirt in a navy blue, ECF No. 169-1, at PageID.2038.

Although Trendtex Holding's evidence for this claim is similar to its evidence for the others, Defendants' response is subtly different.  In his declaration, Ky claims that his company "purchased fabric with the 73571 design directly from HawaiiPrint in multiple colors" and that "Ky's purchased a 'green' color from HawaiiPrint as it was indeed offered for sale at the time."  ECF No. 176-2, at PageID.2196 (Ky Decl. ¶ 28).  In this same paragraph, Ky further claims that "[n]either Ky's nor NTKN . . . purchased this color fabric from any third party."  *Id.*  But missing is any mention of the blue color that Trendtex Holding claims Defendants sold.[8]  Defendants, then, do not specifically rebut the allegation of infringement of the 73571 design in blue.

---

[8]     Ky's declaration omits mention of the navy color, which Trendtex Holding also claims was infringed.  But the summary judgment record includes a response to a request for admissions, in which Defendants deny selling this design in a navy color.  ECF No. 168-52, at PageID.2023-24.

Elsewhere in his declaration, however, Ky more generally asserts that he "purchased all the fabric with the surface design[] . . .73571 . . . directly from HawaiiPrint." *Id.* at PageID.2194 (¶ 15).  And he again alleges that "[n]either Ky's nor NTKN has purchased fabric with th[is] design[] from any other company in any color." *Id.*

To be sure, this allegation is less specific than the allegations in the other counts.[9]  Rather than assert that each of the allegedly infringing colors came directly from HawaiiPrint, Ky more generally asserts that *all* fabric with this design came from HawaiiPrint.  Viewing the facts and drawing inferences in the light most favorable to Defendants, this broader allegation rebuts Trendtex Holding's assertion of infringement, creates a dispute of material fact, and defeats summary judgment on this claim.

For similar reasons, summary judgment is defeated on count eleven, the final claim at issue on this motion.  According to Trendtex Holding, Trendtex Fabrics sold fabric with the EH-20129 design to Ky's International Fashion in black, navy, and blue.  *See* ECF No. 168, at PageID.1790 (Pls.' CSF ¶ 10); ECF No. 168-19, at

---

[9]     The omission of a more specific allegation might simply be an oversight.  At the hearing, Defendants stated that Hung Ky, if given the chance to supplement his declaration, would specifically assert that every allegedly infringing color came directly from Trendtex Fabrics or HawaiiPrint.  The Court concludes that supplementation is not necessary, as Ky's other allegations suffice to create a genuine dispute of material fact.

PageID.1974 (Trendtex records showing two orders from Ky's International Fashion of black, navy, and blue fabric in the EH-20129 design and one order of black and navy fabric in the same design).  And, Trendtex Holding says, Ky's sold garments with this design in both red and yellow.  ECF No. 168, at PageID.1792 (Pls.' CSF ¶ 31); ECF No. 168-48, at PageID.2012 (screenshot of Shaka Time website selling red and yellow shirts with the EH-20129 design); ECF No. 168-4, at PageID.1860 (Benitez Decl. ¶¶ 13, 14) (Shaka Time president alleging that he sold this design from Ky's in red and yellow).

Ky's declaration states that "Ky's received the red color of fabric with the EH-20129 from the factory," with no mention of the yellow fabric that Trendtex Holding claims is infringing.  ECF No. 176-2, at PageID.2195 (Ky Decl. ¶ 21).  But again, Ky broadly alleges that "all of the fabric with the surface design[] EH-20129" was purchased "directly from Trendtex Fabrics."  *Id.* at PageID.2194 (¶ 14).  And Ky further claims that "[n]either Ky's nor NTKN has purchased fabric with th[is] design[] from any other company in any color."  *Id.*

Accordingly, although Ky does not explicitly rebut the allegation that he sold infringing yellow versions of the EH-20129 design, he does generally assert that all fabric with this design came straight from Trendtex Fabrics.  And at the summary judgment stage, that is sufficient to create a dispute of material fact.

32

In sum, on each of the twelve claims, Trendtex Holding has offered evidence to support a finding that Defendants sold garments with unauthorized fabrics that have designs identical to Trendtex Holding's own copyrighted designs.  But the declaration of Hung Ky sufficiently alleges that the purportedly infringing fabrics were received directly from Trendtex Fabrics or HawaiiPrint.  And for that reason, Defendants have identified a genuine dispute of material fact on all twelve infringement claims, defeating the motion for summary judgment.  Trendtex Holding's motion for partial summary judgment is therefore DENIED.

## C.   The Court Elects to Establish a Fact Pursuant to Rule 56(g)

When a court "does not grant all the relief requested by the [summary judgment] motion," Rule 56(g) affords district courts the discretion to "enter an order stating any material fact . . . that is not genuinely in dispute and treating the fact as established in the case."  Fed. R. Civ. Pro. 56(g).  The Rule's purpose is "to salvage some results from the effort involved" and to "narrow[] the scope of the trial."  Wright, Miller & Kane, *supra*, § 2737; *see also id.* ("If the court determines that summary judgment is not warranted, then it is appropriate to consider establishing undisputed material facts.").

An important undisputed fact exists here.  With respect to the twelve copyrights at issue on the motion for partial summary judgment, the parties agree that the designs on the allegedly infringing garments are identical to the Trendtex

Fabrics and HawaiiPrint designs.  Indeed, Defendants' entire argument is that these fabrics came directly from Trendtex Fabrics or HawaiiPrint and are thus not infringing reproductions.  *See, e.g.*, ECF No. 175, at PageID.2117 (Defs.' Opp'n Br. & Counter-Mot.) ("NTKN's accused products were made from fabrics purchased from Trendtex Fabrics, or its predecessor-in-interest, HawaiiPrint."); ECF No. 188, at PageID.2429 (Pls.' Reply Br.) ("Defendants also necessarily concede that the fabrics used to manufacture the Accused Garments are not only substantially similar but literally identical to the corresponding Subject Designs because they are one and the same.").  And Hung Ky's declaration repeatedly states that he purchased all fabrics with the disputed designs directly from Trendtex Fabrics or HawaiiPrint.  *E.g.*, ECF No. 176-2, at PageID.2194 (Ky Decl. ¶¶ 14, 15).

Establishing this fact will streamline a future trial by narrowing its scope.  Accordingly, pursuant to Rule 56(g), the Court deems the following fact established in this case:

> For the twelve counts at issue on Trendtex Holding's motion for partial summary judgment, ECF No. 167, the designs on the allegedly infringing fabrics sold by Ky's International Fashion and/or NTKN are identical to the designs on the corresponding fabrics sold by Trendtex Fabrics and HawaiiPrint.

### D.     No Genuine Dispute of Material Fact Exists for Two of the Three State-Law Counterclaims

NTKN asserts three state-law counterclaims against Trendtex Fabrics: intentional interference with prospective business advantage, business disparagement, and deceptive trade practices.  ECF No. 108-1.  Trendtex Fabrics, in its role as counterclaim defendant, now moves for summary judgment as to all three.  Because NTKN would bear the burden of proof on these counterclaims at trial, Trendtex Fabrics may prevail if it establishes that NTKN lacks sufficient evidence to prove its counterclaims.  *Celotex Corp.*, 477 U.S. at 323; *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000).  The Court has supplemental jurisdiction over these state-law claims, as they arise out of facts that are closely related to this case's copyright infringement claims.  *See* 28 U.S.C. § 1367.

1.   NTKN alleges that Trendtex Fabrics purposefully and intentionally harmed its relationship with retailer customers.  ECF No. 108-1, at PageID.1300 (¶ 35).  To prove a claim of tortious interference with a prospective business advantage, NTKN must establish (1) the existence of a valid business relationship, (2) Trendtex Fabrics's knowledge of that relationship, (3) a purposeful intent to interfere with that relationship, (4) causation, and (5) damages.  *Bodell Constr. Co. v. Ohio Pac. Tech., Inc.*, 458 F. Supp. 2d 1153, 1163 (D. Haw. 2006).

35

Trendtex Fabrics homes its argument on the third element, for which NTKN must prove either that Trendtex Fabrics "pursued an improper objective of harming the plaintiff" or "used wrongful means that caused injury." *Id.* (quoting *Meridian Mortg., Inc. v. First Hawaiian Bank*, 109 Hawaiʻi 35, 48, 122 P.3d 1133, 1146 (App. 2005)). Merely acting to "maximize economic interests" is insufficient. *Id.* (quoting *Meridian Mort., Inc.*, 109 Hawaiʻi at 48, 122 P.3d at 1146). And Trendtex Fabrics insists that NTKN lacks any evidence of an improper purpose or wrongful means.

NTKN has not shown otherwise. It asserts that there is a genuine dispute as to whether Trendtex Fabrics "harmed NTKN's relationships with its customers for a justified reason (enforcing its copyrights) or an unjustified reason (harming a competitor and obtaining a windfall judgment)." ECF No. 177, at PageID.2212. And as purported evidence of an improper purpose, NTKN points to the cease-and-desist letters and the settlement agreements between Trendtex Fabrics and former defendant retailers in this action. The cease-and-desist letters, NKTN claims, falsely accused NTKN of infringement. And the settlement agreements—which included a confidentiality provision and a payment from the defendant retailers to Trendtex Fabrics—allegedly "frightened NTKN's customers from even conducting business with NTKN." *Id.*

Yet NTKN offers nothing to suggest that cease-and-desist letters and settlement agreements are anything but standard business practices. It asserts, without evidence, that the settlement payments were "huge." *Id.* at PageID.2211. And it claims, again without evidence, that the penalties for violating the confidentiality provisions are "exorbitant." *Id.* But as Trendtex Fabrics explained, the Copyright Act permits statutory damages of up to $30,000 for each non-willful infringement and up to $150,000 for each willful infringement. 17 U.S.C. § 504(c). The settlement payments and the initial demands in the cease-and-desist letters are well beneath these statutory caps. And Trendtex Fabrics has legitimate business interests in keeping its settlement amounts confidential; were they made public, retailers could calculate the cost of infringing on these copyrights.

So long as Trendtex Fabrics believed that its copyrights were being infringed, it would rationally enforce those copyrights. Issuing cease-and-desist letters and settling claims with suspected infringers are two ways to do that. NTKN has not met its burden of showing specific facts that create a genuine issue worthy of trial as to whether Trendtex Fabrics purposefully intended to interfere with NTKN's business relationships rather than merely maximize its own economic interest. Summary judgment on this claim is therefore GRANTED.

2. On its business disparagement counterclaim, NTKN asserts that Trendtex Fabrics knew or should have known that its infringement allegations

37

were false, yet it nonetheless accused NTKN of infringement.  ECF No. 108-1, at

PageID.1302 (¶¶ 42, 43).  To prevail on a claim of business disparagement, NTKN

must prove (1) the intentional or negligent (2) publication (3) of a false statement

(4) that causes others not to deal with the party and (5) special damages.  *See*

*Hawaiian Ins. & Guar. Co. v. Blair, Ltd.*, 6 Haw. App. 447, 455 & n.10, 726 P.2d

1310, 1315 & n.10 (1986); *see also Cal. Scents v. Surco Prods., Inc.*, 406 F.3d

1102, 1109 (9th Cir. 2005).

Trendtex Fabrics challenges two of these requirements.  It first asserts that

its statements are true, as NTKN was in fact infringing on its copyrights.  And in

any case, because Trendtex Fabrics believed NTKN was infringing on its

copyrights, NTKN cannot prove that Trendtex Fabrics *knew* its statements were

false.

A central element of the business disparagement tort is that the tortfeasor

knew or should have known that its statement was false.  NTKN, however,

adduces no evidence that Trendtex Fabrics satisfies this knowledge requirement.

At the hearing, NTKN claimed that even if Trendtex Fabrics did not

knowingly make false infringement accusations, it acted recklessly by relying on

its business records.  Yet NTKN offers nothing to suggest that it is reckless for a

business to rely on its own records, kept in the normal course of business, to

determine its sale history.

38

Without more, NTKN has not shown that a genuine dispute exists as to whether Trendtex Fabrics knew its infringement allegations were false. On this claim too, Trendtex Fabrics's motion for summary judgment is GRANTED.

3. NTKN's final counterclaim is under Hawaii's Uniform Deceptive Trade Practice Act. It argues that Trendtex Fabrics's statements are likely to mislead consumers and deter them from purchasing NTKN's products. ECF No. 108-1, at PageID.1302 (¶ 47). According to NTKN, the cease-and-desist letters constitute a "deceptive trade practice" that "[d]isparages the goods, services, or business of another by false or misleading representation of fact." Hawaiʻi Revised Statutes (HRS) § 481A-3(a)(8) (1984).

This claim presents a wrinkle, for it differs from the preceding two state-law claims in an important way. While the tortious interference and business disparagement claims have an intent element, the Hawaiʻi Uniform Deceptive Trade Practice Act appears to lack such a requirement. To prevail under this statute, then, NTKN does not need to prove that Trendtex Fabrics *knew* its statements were false—it need only prove that they were *in fact* false. *See* HRS § 481A-4(a) ("Proof of . . . intent to deceive is not required.").

Trendtex Fabrics, however, does not address this nuance. It only argues that its statements cannot be false or misleading because NTKN did, in fact, infringe on Trendtex Fabrics's copyrights. But that argument ultimately turns on a finding of

liability.  And because the Court denies the partial motion for summary judgment on the claims of infringement, it cannot conclude that Trendtex Fabrics's accusations of infringement were truthful, precluding summary judgment on this claim.

That is not to say this claim will prevail at trial.  In addition to proving that the statements were false, NTKN will also be required to show the other elements of the claim, like whether the cease-and-desist letters disparaged their goods and whether the letters are likely to damage NTKN.  But Trendtex Fabrics did not raise those arguments on this motion, and the Court therefore has no occasion to pass on them.  The motion for summary judgment as to NTKN's claim for deceptive trade practices is DENIED.[10]

## CONCLUSION

For the foregoing reasons, Defendants' Counter-Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART, as Trendtex Holding may proceed as a plaintiff but Trendtex Fabrics is dismissed from the copyright infringement dispute.  Trendtex Holding's Motion for Partial Summary Judgment is DENIED, but the Court ORDERS that the specified fact be treated as established in this case pursuant to Federal Rule of Civil Procedure 56(g).  Finally, Trendtex

---

[10]    Trendtex Fabrics also requests attorneys' fees and costs for defending against NTKN's counterclaims.  The Court declines to award such fees or costs here.

Fabrics's Motion for Summary Judgment Against Counterclaimant NTKN is GRANTED IN PART with respect to the claims for interference with prospective business advantage and business disparagement and DENIED IN PART with respect to the claim for deceptive trade practices.

IT IS SO ORDERED.

DATED:  May 23, 2024, at Honolulu, Hawai'i.

Micah W.J. Smith
United States District Judge

Civil No. 22-00287 MWJS-KJM; *Trendtex Fabrics, Ltd.* et al. *v. NTKN, Inc.* et al.; ORDER DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, GRANTING IN PART AND DENYING IN PART COUNTERCLAIM DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AGAINST COUNTERCLAIMANT, AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' COUNTER-MOTION FOR SUMMARY JUDGMENT

41